# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 1, 2009

Charles R. Fulbruge III
Clerk

No. 07-31049

MICHELL B. DEVILLE; RICKY JAMES DEVILLE

Plaintiffs - Appellants

v.

LOUIS DALE MARCANTEL, individually and in his official capacity as Chief of Police of the Village of Turkey Creek, Louisiana; DEWAYNE TARVER, individually and in his official capacity as a duly commissioned law enforcement officer of the Village of Turkey Creek, Louisiana; VILLAGE OF TURKEY CREEK

Defendants - Appellees

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before KING, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:

Michell B. Deville ("Deville") and her husband, Ricky James Deville, appeal from the district court's grant of summary judgment to defendants on their § 1983 and state law claims, all of which stem from two separate arrests of Deville in August 2005 and May 2006. They primarily assert that the defendant officers arrested Deville without probable cause and used excessive force, causing her to suffer substantial physical injuries, and that the Village of

Turkey Creek is liable as the officers' employer. For the reasons set forth below, we affirm in part and reverse in part, and remand for further proceedings.

## I. BACKGROUND

The evidence, viewed in the light most favorable to plaintiffs, establishes: On the evening of August 5, 2005, Deville, a 45-year-old registered nurse, was driving with her two-year-old granddaughter through the Village of Turkey Creek, Louisiana, on her way to Monroe, Louisiana, where she planned to return her granddaughter to her daughter and spend the night. As she passed through Turkey Creek, Deville set her car's cruise control to 40 mph, which was the speed limit. However, she noticed a police cruiser with its lights on behind her, so she pulled to the side of the road, believing that it was merely attempting to go around her. When the cruiser came directly behind her, Deville realized that she was being pulled over. She moved completely off the side of the road and stopped her vehicle.

Turkey Creek Police Officer Dewayne Tarver, a defendant in this case, exited his cruiser and came to Deville's driver's side window. Tarver was in uniform and Deville immediately recognized him as a police officer. Tarver requested Deville's name and driver's license, which she provided. She also asked why he pulled her over. Tarver responded that he "clocked [Deville] speeding 50 on the hill," 10 mph over the speed limit. Deville responded, "[T]hat wasn't possible; I had my cruise on 40." Tarver again stated that he clocked her at 50 mph and Deville responded "that it was bullshit." Tarver asked for her registration papers and, as Deville reached into her glove compartment to retrieve the papers, she repeated that the stop was "bullshit." Tarver then asked her to step out of the vehicle, to which she responded, "I haven't done anything wrong" and did not comply with Tarver's request to exit the vehicle. Tarver then asked her again to step out of the vehicle and stated that he was calling child services to pick up Deville's two-year-old granddaughter. Rather than comply with these instructions, Deville rolled her window up, and called her husband,

2

daughter-in-law, and son. Tarver walked back to his cruiser and called Turkey Creek Chief of Police Louis Dale Marcantel.

Deville's husband and son agreed to come to the location of the stop and assist her with her granddaughter. Meanwhile, Chief Marcantel, who was off-duty that evening, arrived at the scene, spoke with Tarver, and then approached Deville's driver's side window -- which was still rolled up. Marcantel showed his badge and spoke first, telling Deville that she "needed to get the window down or he was going to break it." According to Deville, Marcantel did not ask her to exit the vehicle. Deville did not roll her window down, stating that she was waiting for her husband to arrive and "see about my baby." Deville recounted that Marcantel began hitting the window and her car with a black stick (said to be a heavy flashlight) and, even though she began to roll down the window, the glass broke before she was able to do so. Notably, Deville contends that she never saw a ticket, nor was she ever asked to sign one. The officers contend that they presented a ticket to her, but that she refused to sign it.

According to Deville, at that point Marcantel grabbed her through the window and opened the door, and "they" (presumably referring to Marcantel and Tarver) pulled her out of the vehicle. The officers did not hit her, although they threw her up against the vehicle, resulting in a blow to her abdomen area. She was placed in handcuffs and led towards the police cruiser. Deville fell to the ground on the way to the cruiser complaining of pain in her abdomen. The officers lifted Deville up and placed her in the back of the cruiser; her husband arrived shortly thereafter and took custody of the child.

Deville was taken to the Evangeline Parish Sheriff's Office. One of the officers had called an ambulance to meet them at the Sheriff's Office, and Deville initially refused medical treatment. Deville later requested treatment when she noticed that she was bleeding from her head, and the ambulance returned and transported Deville to the hospital. She was treated at the hospital, and a blood sample was taken and submitted to the Louisiana State Crime Laboratory for

analysis. Deville's husband and nurses at the hospital remarked that Marcantel smelled like alcohol, implying that he was intoxicated. After Deville finished at the hospital, she was taken back to the Sheriff's Office and charged with speeding, aggravated battery, and resisting an officer. She was released that night. The parish district attorney subsequently dropped the charges against Deville.

The toxicology report from the blood sample taken at the hospital showed the presence of Phentermine and Sentraline (caused by Deville's legal use of prescription medications). Based on this report, Marcantel later sought and obtained an arrest warrant from a justice of the peace against Deville for driving while under the influence of a controlled substance and for illegal use of a controlled substance in the presence of a minor.[1] The warrant issued on May 18, 2006, nearly nine months after the first arrest and approximately the same time Deville's counsel sent a letter to the Village of Turkey Creek giving notice that she would assert claims based on the first arrest. Deville was arrested pursuant to that warrant on June 13, 2006, and released. Deville alleges these controlled substance charges were baseless and motivated only by her threat of litigation against Marcantel and the other defendants. The parish district attorney later dropped these charges as well.

Defendants have a very different view of the August 2005 stop and arrest. They claim that Deville was speeding (Tarver states that he clocked her going 10 mph over the speed limit using his radar gun), that she became enraged during the stop, shouted obscenities at the officers, and refused to sign the speeding ticket. The officers state they were concerned about the welfare of the child, whom they felt was in clear distress as a result of Deville's behavior. Marcantel testified that he informed Deville that she was under arrest and

---

[1] There is no evidence in the record that Marcantel knew when he sought the warrant that the substances were prescribed to Deville. Indeed, Marcantel's deposition testimony is uncontroverted that Deville told the paramedics and hospital staff that she was not taking prescription medication.

commanded her to exit the vehicle. This led to the officers' forcible removal of Deville from the vehicle, although Marcantel testified that the officers "didn't shove her, . . . didn't push her, didn't beat on her" and that Deville threw a cell phone that hit Marcantel. The officers did not call protective services, however, but released the grandchild to Mr. Deville when he arrived at the scene.

On August 24, 2006, Deville and her husband filed suit in Louisiana state court against the Village of Turkey Creek, and Chief Louis Marcantel and Dewayne Tarver, both individually and in their official capacities. Defendants thereafter removed the case to the United States District Court for the Western District of Louisiana. Plaintiffs' complaint asserted claims under § 1983 against Tarver and Marcentel based on unreasonable search and seizure, false arrest, battery, excessive force, and malicious prosecution, the First Amendment, and the Ninth Amendment, as well as a claim that Tarver and Marcentel conspired to violate her civil rights in violation of § 1985. The plaintiffs also alleged § 1983 claims against the Village of Turkey Creek on the basis that it maintained policies or customs exhibiting deliberate indifference to Deville's civil rights. Finally, the plaintiffs asserted claims under Louisiana law for assault, battery, excessive force, false arrest, false imprisonment, and malicious prosecution (with the Village of Turkey Creek vicariously liable). The officers raised qualified immunity as a defense.

The Village of Turkey Creek moved for judgment on the pleadings under Rule 12(c), and all defendants -- including the Village of Turkey Creek -- moved for summary judgment. The district court considered these motions together, and concluded that plaintiffs did not meet their burden on summary judgment with respect to the federal claims. Accordingly, the district court granted the defendants' motions for summary judgment as to the federal claims, dismissing them with prejudice, and declined to exercise jurisdiction over the remaining state-law claims, dismissing them without prejudice. Because the Village of Turkey Creek's motion for judgment on the pleadings dealt with the state-law

5

claims exclusively, the district court denied that motion. All parties, including every defendant, made motions for reconsideration, with plaintiffs requesting reconsideration of the ruling on the federal claims and defendants requesting reconsideration of district court's decision not to exercise supplemental jurisdiction over the state-law claims. The district court granted the defendants' motion and dismissed all of plaintiffs' state-law claims with prejudice, and denied plaintiffs' motion to reconsider.

Plaintiffs timely appealed.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). A party is entitled to summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004). In reviewing the evidence, the court must "refrain from making credibility determinations or weighing the evidence." *Turner*, 476 F.3d at 343.

## III. DISCUSSION

The district court granted summary judgment to defendants on the following claims, all of which plaintiffs have adequately briefed: (1) § 1983 false arrest claims against Marcantel and Tarver arising from the August 2005 arrest; (2) § 1983 excessive force claims against Marcantel and Tarver arising from the August 2005 arrest (including a specific allegation against Tarver that he used excessive force in applying the handcuffs too tightly); (3) § 1983 false arrest and malicious prosecution claims against Marcantel arising from the May 2006

6

arrest; (4) a § 1983 claim against the Village of Turkey Creek; and (5) equivalent claims under Louisiana law. Each claim is addressed in turn.[2]

## A.    False Arrest: August 2005 Arrest

To establish that the individual defendants violated Deville's constitutional rights by arresting her in August 2005, plaintiffs must show that the officers lacked probable cause. *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). "A warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resenediz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). "If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

Turning to Deville's false arrest claim against Tarver, Deville was charged with three offenses: failure to sign a traffic ticket, resisting an officer, and speeding. Plaintiffs have met their burden at summary judgment to show that there is a genuine issue as to the material fact of whether Tarver lacked probable cause to arrest Deville for those offenses. First, the relevant Louisiana statute permits officers to make full-custody arrests of persons who refuse to sign a traffic ticket, in lieu of issuing the usual citation. *See* La. Rev. Stat. § 32:391(B) (West. 2002).[3] But the statute does not establish a criminal offense;

---

[2] Plaintiffs have not presented argument on appeal for the following claims and issues: (1) the unlawful arrest and malicious prosecution claims against Tarver based on the second arrest; (2) the First Amendment; (3) the Ninth Amendment; (4) § 1985 and § 1986; and (5) conspiracy under Louisiana Civil Code Art. 2324. These claims and issues are therefore deemed waived. *See In re Tex. Mortgage Services Corp.*, 761 F.2d 1068, 1073 (5th Cir. 1985). Plaintiffs also concede that the claims against Marcantel and Tarver in their official capacity should be treated as claims against the Village of Turkey Creek.

[3] "If the person arrested holds a Louisiana operator's license and gives his written promise to appear at the time and place stated, the officer may release him from custody or take him immediately before a magistrate, but shall not require the person arrested to deposit

7

it only establishes the procedure for arrests when a traffic offense has already occurred. *See id.* In this case, there is a disputed issue of fact as to whether the officers presented a ticket to Deville and, consequently, whether she refused to sign it. Second, under Louisiana law, a person commits the offense of resisting arrest only if he resists a "lawful arrest"; that is, an arrest supported by probable cause. *See* La. Rev. Stat. § 14.108(A) (West 2004); *State v. Lindsay*, 388 So.2d 781, 782 (La. 1980) ("It is a long-established principle in Louisiana law that a citizen has the right to resist an unlawful arrest."). Thus, whether Deville was lawfully arrested depends on whether Tarver had probable cause to conduct an arrest at all. If not, then any resistance by Deville was lawful and did not constitute "resisting arrest." *See Lindsay*, 388 So.2d at 782.

An officer may conduct a warrantless arrest based on probable cause that an individual has committed even a minor offense, including misdemeanors. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Tarver stated in his deposition testimony that he detected Deville going 50mph in a 40mph zone using his radar gun, which he said he was operating correctly.[4] Plaintiffs have offered Deville's deposition testimony, in which she testified that she was in fact not speeding, as evidenced by the fact that she set her vehicle's cruise control at the 40mph speed limit. However, evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."

his operator's license. Any such person refusing to give the written promise to appear shall be taken immediately by the arresting officer before the nearest or most accessible magistrate having jurisdiction. Any person who willfully violates his written promise to appear shall be punished as provided in R.S. 32:57.1, regardless of the disposition of the charge upon which he was arrested originally. The arresting officer shall fully inform the arrested person of the consequences of failing to honor a written promise to appear pursuant to R.S. 32:57.1."

[4] Marcantel verified that the radar gun in Tarver's cruiser was working in August 2005. He also noted that the radar gun became inoperable approximately one year earlier, but that it had been fully repaired by the time of Deville's first arrest.

*See Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). Thus, Tarver's uncontradicted testimony that his radar gun indicated that Deville was speeding could establish probable cause for the arrest. *See United States v. Coney*, 456 F.3d 850, 857 (8th Cir. 2006).

Plaintiffs, however, have provided evidence that would allow the jury to disbelieve Tarver's testimony. "[A] motion for summary judgment cannot be defeated solely by conclusional allegations that a witness lacks credibility. Nevertheless, when the circumstances are conducive to lying, well-supported suspicion of mendacity may serve as a legitimate basis for the factfinder's reasonable inferences concerning the ultimate facts at issue." *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000) (footnote omitted). Summary judgment is not appropriate when "questions about the credibility of key witnesses loom . . . large" and the evidence could permit the trier-of-fact to treat their testimony with "skeptical scrutiny." *Id.* at 331.

Tarver admitted that he has a history of problematic arrests and that citizens have made complaints against him. The Evangeline Parish Sheriff asked him to resign his position as a sheriff's deputy (which he held simultaneously with his position with the Village of Turkey Creek) because of a complaint of excessive force in an unrelated case. More directly implicating his credibility, Tarver admits the parish district attorney asked him to resign from the Turkey Creek police department because he filed a false charge of possession of marijuana against an individual who in fact did not have marijuana (that incident is also otherwise unrelated to the instant case).[5] And although Tarver testified that the radar gun had the ability to "lock-in" a detected speed, he did not "lock-in" the speed in the Deville case -- and, as a result, he was unable to verify the speed when asked by Deville's husband to do so. In light of this

---

[5] These events occurred after the events at issue in this case. *See infra* p.18-19. Prior to his resignation from the Evangeline Parish Sheriff's Office, Tarver worked contemporaneously for both the Sheriff's Office and the Village of Turkey Creek Police Department on a part-time basis.

discrediting evidence -- especially evidence that Tarver has falsified other charges -- and Deville's sworn testimony that she was not speeding because her cruise control was set on 40mph, a reasonable jury could disbelieve Tarver's testimony and find that he lacked probable cause for the first arrest.[6]

"Despite their participation in . . . constitutionally impermissible conduct, Defendants may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There is no doubt that it was clearly established in August 2005 that "[a]n arrest is unlawful unless it is supported by probable cause." *Flores v. City of Placidos*, 381 F.3d 391, 402 (5th Cir. 2004); *see Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994). An officer's conduct is objectively reasonable "if a reasonable person in their position could have believed he had probable cause to arrest." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Thus, because there are genuine issues as to the material facts of whether Deville was detected to have been speeding, whether she was asked sign a traffic ticket and whether she was validly exercising her established right under Louisiana law to resist an unlawful arrest, we conclude that Tarver is not entitled to qualified immunity.

Turning to Deville's false arrest claim against Marcantel stemming from the August 2005 arrest, we affirm the district court's grant of summary judgment. We pretermit considering or deciding whether Marcantel unlawfully arrested Deville because it is clear that his actions with respect to Tarver's

---

[6] Although we conclude *infra* that Marcantel is entitled to qualified immunity because he relied on Tarver's statements, that reliance does not make an otherwise unconstitutional arrest lawful. *See Whiteley v. Warden*, 401 U.S. 560, 568-69 (1971) (holding that "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest"); *see also Rogers v. Powell*, 120 F.3d 446, 455-56 (3d Cir. 1997) (holding that arrest was unsupported by probable cause but granting qualified immunity to defendants who made the arrest in reliance on communications with other officers).

initial arrest of Deville were not objectively unreasonable. "[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997). Here, the uncontroverted evidence shows that Tarver communicated the reason for the stop to Marcantel, specifically relaying that Deville had been speeding and refused to sign the traffic ticket. And there is no evidence that Marcantel had a reason to disbelieve Tarver's account at the time of the August 2005 arrest. Accordingly, Marcantel could reasonably believe that Deville was speeding because he had an account of criminal activity from a seemingly reliable witnessing officer.

## B.    Excessive Force

To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (observing that this "area is one in which the result depends very much on the facts of each case"). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.[7]

---

[7] Plaintiffs' § 1983 "excessive force claim is separate and distinct from [their] unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest itself was justified." *See Freeman v. Gore,* 483 F.3d 404, 417 (5th Cir. 2007).

Applying the *Graham* factors to this case, we conclude the district court erred in granting summary judgment to defendants. Deville was stopped for a minor traffic violation -- exceeding the 40 mph speed limit by 10mph -- making the need for force substantially lower than if she had been suspected of a serious crime. She testified that she was never asked to sign a traffic ticket, and therefore never refused to sign one. According to Deville's account of the stop, there was no reason to believe that her actions posed a threat to the officers, herself, or to her grandchild -- whom Deville testified was perfectly calm until Marcantel began beating and breaking the car window. And, while she was in control of the vehicle and its motor was running and its gear in park, she said there was no evidence or other indication that she would flee or use the vehicle as a weapon. Indeed, she told the officers that she was waiting for her husband to arrive. Defendants have not argued on appeal that she actually attempted to flee. Most importantly, there is a factual dispute over the nature of Deville's resistance. According to Deville's version of events, her resistance was, at most, passive in that she merely refused to leave her grandchild and exit the vehicle until Mr. Deville came to get the child -- not that she affirmatively, physically resisted as the officers contend.

Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance. *See Mecham v. Frazier*, 500 F.3d 1200, 1205 (10th Cir. 2007); *Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006). However, officers must assess not only the need for force, but also "the relationship between the need and the amount of force used." *See Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). Taking the facts in the light most favorable to plaintiffs, a jury could reasonably find that the *degree* of force the officers used in this case was not justifiable under the circumstances. A reasonable jury could infer from Deville's deposition testimony that Marcantel engaged in very little, if any, negotiation with her -- and find that he instead quickly resorted to breaking her driver's side

12

window and dragging her out of the vehicle. The district court apparently credited the officers' statements that Deville's endangerment of her grandchild's safety required a high degree of force. However, the cause of the child's fear and upset is genuinely in dispute; Deville testified that the child was quiet during the stop, was not in danger, and only became distressed when the officers began using force. Both parties' experts agree that continued negotiations are more appropriate than actual force where the suspect is only stopped for a minor traffic offense and is making no attempt to flee. To the extent the officers claim they needed to use force to prevent Deville from fleeing or using the vehicle as a weapon, Deville testified that the car's motor was running but that she never put the vehicle in gear.[8] And it is undisputed that Deville told the officers she was waiting for her husband to arrive, indicating that she was not going to flee.

Finally, the jury could view the severity of Deville's injuries as evidence of excessive force. "In evaluating excessive force claims, courts may look to the seriousness of injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur.'" *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir. 2006) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Thus, "the extent of [the] injury inflicted" may be considered in determining whether the officers used excessive force. *Whitley*, 475 U.S. at 321 (internal quotation marks omitted); *see Jones v. Buchanan*, 325 F.3d 520, 530 (4th Cir. 2003). The day after the arrest, Deville visited a doctor who observed contusions to both wrists, neuropathy of her hands, right shoulder strain, left shoulder bruising (with hand prints), and multiple cuts caused by broken glass (with one on her forehead). A week later, she visited her doctor complaining of left elbow and jaw pain, resulting from the arrest. Deville also

_____

[8] Indeed, it is understandable that Deville would need to leave the vehicle running in order to keep the temperature cool for her infant grandchild, as the stop occurred in August in central Louisiana.

complained in her deposition testimony of chronic, lasting injuries to her right elbow caused by the arrest. She also suffered neuropathy in her hands and fingers, which required four surgeries and multiple other injections. She testified that she missed 13 to 15 weeks of her work as a registered nurse because of these injuries.

As to the allegation that Tarver used excessive force in that he applied the handcuffs too tightly, we have held "that minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). In *Freeman*, the plaintiff alleged that she "suffered bruising on her wrists and arms because the handcuffs were applied too tightly," and the court found those injuries were too minor to support an excessive force claim. *Id*. In this case, Deville has provided evidence that the handcuffs were applied so tightly as to cause long-term nerve damage that was severe enough to require four surgeries. These injuries are not *de minimis. Compare Tarver v. City of Edna*, 410 F.3d at 751-52 (holding that "'acute contusions of the wrist' and psychological injury from being handcuffed" were *de minimis* and insufficient to find excessive force). While the officers claim that she did not complain about being cuffed too tightly and Tarver claims he used his finger to "double lock" the cuffs, the injuries Deville sustained as well as her testimony that Tarver did not perform the double-lock procedure create genuine issues as to these material facts. Thus, in light of the other factual disputes outlined above, plaintiffs have established the presence of material factual disputes regarding Tarver's alleged use of excessive force in applying the handcuffs.

Defendants contend they are entitled to qualified immunity on plaintiffs' § 1983 excessive force claims even if Deville has shown she was deprived of a constitutional right. When the arrest occurred, Deville had a clearly established right to be free from excessive force, *Tarver v. City of Edna*, 410 F.3d at 753-54, and it was clearly established that the amount of force that the officers could use

14

"depend[ed] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee," *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). Accepting Deville's version of events for summary judgment purposes, this case involved: a traffic stop for a minor traffic offense unsupported by probable cause; Deville's passive resistance to being removed from her car and separated from her grandchild, in compliance with her well-established rights under state law to resist an unlawful arrest (*i.e.*, an arrest unsupported by probable cause); the officer's threat of calling child protective services despite no indication that the child was in distress or that Deville intended to flee; an officer who others said smelled of alcohol beating on Deville's driver's window with a heavy flashlight and breaking the window; a rough extraction of Deville from the vehicle by both officers, causing a forceful blow to Deville's abdomen; and handcuffs applied so tightly that they caused severe nerve damage. These alleged facts are sufficiently egregious to warrant a denial of qualified immunity because a reasonable officer would have known that the degree of force was unconstitutionally excessive under the circumstances. *See Bush*, 513 F.3d at 501. Accordingly, defendants are not entitled to qualified immunity on the § 1983 excessive force claims.

## C.  False Arrest and Malicious Prosecution: May 2006 Arrest

Plaintiffs next argue that the district court erroneously granted summary judgment to defendants on their alleged constitutional violations stemming from the May 2006 arrest. We disagree.

This court has held that the federal Constitution does not include a "freestanding" right to be free from malicious prosecution. *See Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc). Instead, it must be shown that the officials violated specific constitutional rights in connection with a "malicious prosecution." For example, "the initiation of criminal charges without probable cause may set in force events that run afoul of the . . . Fourth

15

Amendment if the accused is seized and arrested . . . or other constitutionally secured rights if a case is further pursued." *Id.* at 953-54. However, these "are not claims for malicious prosecution." *Id.* at 954. Accordingly, plaintiffs' claim under § 1983 for "malicious prosecution" in respect to the May 2006 arrest is not independently cognizable, and defendants are therefore entitled to summary judgment on that claim.

Turning to plaintiffs' May 2006 unlawful arrest claim, plaintiffs offer two theories of liability: (1) that there was not probable cause to support the second arrest, and (2) that Marcantel failed to conduct a reasonable investigation prior to the arrest. Even if we assume that Marcantel made the May 2006 arrest without probable cause, he nevertheless made the arrest pursuant to a valid arrest warrant signed by a justice of the peace. "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994); *see also Murray v. Earle*, 405 F.3d 278 (5th Cir. 2005) ("[W]hen a neutral intermediary, such as a justice of the peace, reviews the facts and allows a case to go forward, such an act 'breaks the chain of causation.'" (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988))). Despite review by an independent intermediary, the initiating party may be liable for false arrest if the plaintiff shows that "the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand,* 838 F.2d at 1428. Plaintiffs have not argued that defendants somehow tainted the justice of the peace's deliberations, meaning that review by that independent intermediary relieves them of liability for the alleged false arrest, and the district court thus properly granted summary judgment to them on this claim.

Finally, plaintiffs have not pointed to any legal basis for asserting a claim under § 1983 that Marcantel violated Deville's constitutional rights by failing to undertake a reasonable investigation. Accordingly, defendants are entitled to

summary judgment on this "unreasonable investigation" claim. *See Shields v. Twiss*, 389 F.3d 142, 150-51 (5th Cir. 2004) ("Regarding Shields's 'unreasonable investigation' claim, Shields has pointed to no legal basis for a § 1983 action of this sort, and the court knows of none. Hence, this claim also fails.").

## D.  Municipal *Monell* Liability

Plaintiffs next assert that the district court erred in granting summary judgment to the Village of Turkey Creek on their § 1983 claims. We disagree and thus affirm the district court on this issue.

Plaintiffs have argued that the Village of Turkey Creek is liable for its deliberately indifferent failure to adequately train and supervise Marcantel and Tarver. *Respondeat superior* does not apply to municipalities for claims under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, a municipality is liable under § 1983 only if its "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. The plaintiff can prove the existence of a municipal policy through, *inter alia*, the actions of the municipality's legislative body or an individual with final decisionmaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 483-84 (1986). The plaintiff can also prove the existence of a municipal custom by pointing to a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).

In *City of Canton v. Harris*, 489 U.S. 378 (1989), a case specifically involving the training of police officers, the Court held that a municipality can be liable under § 1983 for failing to train its employees. *Id.* at 387. However, the "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of

17

persons with whom the police come into contact." *Id.* at 388. The Court further elaborated that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality -- a 'policy' as defined by our prior cases -- can a city be liable for such a failure under § 1983." *Id.* at 389. We have extended *City of Canton* to cover a plaintiff's allegations that the municipality failed to properly discipline its employees. *See Piotrowski v. City of Houston*, 237 F.3d 567, 591 (5th Cir. 2001) ("Self-evidently, a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens.").

First, the evidence shows that Tarver has had only one other excessive force complaint against him (the unrelated excessive force complaint that led to his resignation from his position as a sheriff's deputy), which was filed *after* the Deville incident. The district attorney asked him to resign his position as a Turkey Creek officer for making a false charge after the Deville incident as well. Deputy Adam Fruge of the Evangeline Parish Sheriff's Department knew Tarver as a former colleague with the Sheriff's Department and through Fruge's interaction with Turkey Creek officers. He testified that Tarver was hard to work with because he had a "quick temper" and used force on a couple of occasions when Fruge would have taken different action. Fruge also noted that Tarver may have been untruthful while testifying in court on a prior occasion. However, there is no indication in Fruge's testimony that anyone other than Fruge knew of these problems, or that the Village or the relevant policymakers knew about them. Finally, as to Marcantel, Marcantel testified that he was once the subject of an anonymous complaint, filed with the state troopers, that he smelled of alcohol on a traffic stop. According to Marcantel, the troopers investigated immediately and found that he had not been drinking.

At bottom, plaintiffs have not introduced evidence that would permit a jury to find that the Village of Turkey Creek acted with deliberate indifference towards Deville's constitutional rights in failing to discipline these officers.

18

There is no evidence that formal complaints were filed against them before the Deville incident, despite Fruge's concerns about Tarver's performance, and there is no evidence that the village or the relevant decisionmakers knew about those problems. Thus, plaintiffs have not shown that the Village's alleged failure to discipline the officers was undertaken with "deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski,* 237 F.3d at 579, 581 (quoting *Bd. of County Comm'rs of Byran County v. Brown*, 520 U.S. 397, 407 (1997)); *see also Scott v. Moore*, 114 F.3d 51, 54-55 (5th Cir. 1997) (en banc) (finding no genuine issue regarding city's alleged deliberate indifference when there was "no showing that the city had actual knowledge" that its actions created a risk of harm to the plaintiff and had received no prior complaints regarding the tortfeasor-employee). Accordingly, the district court did not err in granting summary judgment to the Village of Turkey Creek on plaintiffs' § 1983 claims.

## E.  Claims Under Louisiana Law

Plaintiffs have alleged and briefed the following state-law claims against Tarver and Marcantel: (1) false arrest and imprisonment, (2) excessive force and battery; and (3) malicious prosecution. Plaintiffs have also asserted a vicarious liability claim against the Village of Turkey Creek. These claims are addressed in turn.

### 1.  False Arrest and Imprisonment

Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority." *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La. 1977). A facially valid arrest warrant immunizes the officers from false arrest and imprisonment claims, thus precluding plaintiffs from maintaining this claim based on the second arrest. *See Deville v. Jefferson Parish Sheriff's Dep't*, 762 So.2d 641, 643 (La. Ct. App. 2000); *Rodriguez v. Deen*, 759 So.2d 1032, 1035 (La.

19

Ct. App. 2000); *Molette v. City of Alexandria*, 2005 WL 2445432, at \*8 (W.D. La. 2005). As to the first arrest, the officers had statutory authority for the arrest only if they had probable cause. Louisiana Code of Criminal Procedure article 213 provides that "a law enforcement officer may arrest a person without a warrant when that officer has 'reason to believe that the person to be arrested has committed an offense.'" *State v. Smith*, 960 So.2d 369, 375 (La. Ct. App. 2007). This requires that an officer have probable cause for the arrest. *See State v. Hathaway*, 411 So.2d 1074, 1078-79 (La. 1982). As discussed above, viewing the evidence in the light most favorable to plaintiffs, Tarver lacked probable cause for the first arrest. Accordingly, the district court also erred in granting summary judgment to Tarver on plaintiffs' state-law false arrest and imprisonment claim, insofar as it relates to the August 2005 arrest.

As to Marcantel's liability for the August 2005 arrest, we believe the decision in *Kyle* is instructive. *Kyle* involved false arrest and imprisonment claims asserted against two police officers who, relying on information communicated to them by two security guards, arrested the plaintiffs on suspicion that they had committed an armed robbery. *See Kyle*, 353 So.2d at 972. The Louisiana Supreme Court held that the officers could not be held liable for false arrest and imprisonment because "the statements [of the security guards] gave the officers reasonable cause to believe that [the plaintiffs] had robbed the supermarket." *Id*. Similarly, in this case, the uncontroverted evidence shows that Marcantel relied on the seemingly reliable statements of officer Tarver as to Deville's speeding and refusal to accept a ticket. There is no evidence establishing that, at the time of the arrest, Marcantel had reason to disbelieve Tarver's description of the criminal activity, or to question his reasons for arresting Deville. Accordingly, under *Kyle*, the district court did not err in granting summary judgment to Marcantel on plaintiffs' state-law false arrest and imprisonment claim.

2.     **Excessive Force/Battery**

20

Louisiana's excessive force tort mirrors its federal constitutional counterpart. "The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result." *Kyle*, 353 So.2d at 972. "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case," and factors to consider are: (1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment. *Id.* at 973. These considerations are sufficiently similar to the *Graham* factors that our decision on this claim mirrors our decision of plaintiffs' § 1983 excessive force claim, and we thus reverse the district court's grant of summary judgment to defendants on the state-law excessive force/battery claim. *See Penn v. St. Tammany Parish Sheriff's Office*, 843 So.2d 1157, 1159-60 (La. Ct. App. 2003).[9]

### 3. Malicious Prosecution

Plaintiffs have also asserted a state-law claim against Marcantel alleging that he engaged in malicious prosecution in connection with the second arrest and subsequent charges. Unlike federal law, Louisiana recognizes a cause of

---

[9] Although plaintiffs' federal excessive force claim does not depend on the constitutionality of the underlying arrest, *see Freeman*, 483 F.3d at 417, that principle does not apply to their state-law excessive force and battery claims. Louisiana law authorizes only that "the person making a *lawful* arrest may use reasonable force to effect the arrest and detention." La. Code Crim. P. art. 220 (emphasis added). "If the arrest is unlawful then all force used to effectuate the arrest is excessive and constitutes a battery." *LeBauve v. State*, 618 So.2d 1187, 1193 (La. Ct. App. 1993); *see also Ross v. Sheriff of Lafourche Parish*, 479 So.2d 506, 510 (La. Ct. App. 1985) ("The jurisprudence . . . establishes that the physical attack of a private citizen by a police officer absent a valid arrest constitutes a battery."). As noted above, an unlawful arrest is an arrest lacking probable cause. *Martin v. Michael J. Neustrom*, 967 So.2d 550, 552 (La. Ct. App. 2007). Because we have found that the evidence taken in the light most favorable to plaintiff shows the first arrest was unlawful (i.e., without probable cause), then *any* force used by the officers constituted a battery under state law.

action for malicious prosecution. *See Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984). The elements of the cause of action are: (1) the commencement or continuation of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. *Id.*

The district court's decision to grant summary judgment on this claim was proper for the following reasons. Plaintiffs must prove that the proceeding ended in a "bona fide termination" in Deville's favor. A procedural dismissal of the charges, even if the dismissal is with prejudice, does not satisfy that element of the cause of action. *See Savoie v. Rubin*, 820 So.2d 486 (La. 2002). Rather, the element requires "that the underlying litigation . . . be brought to a conclusion on the merits." *Id.* at 488. It is undisputed that the parish district attorney exercised his power to *nolle prosse* the charges, which is a procedural dismissal of the charges without prejudice -- not a bona fide termination in the defendant's favor. [10]

### 4. Vicarious Liability

Plaintiffs claim the Village of Turkey Creek is vicariously liable for the officers' tortious conduct. Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer. *See Brasseaux v. Town of Mamou*, 752 So.2d 815 (La. 2000). "Although an employment relationship may in fact exist, the employer will not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of employment with the

---

[10] "The district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, and in order to exercise that power it is not necessary that he obtain consent of the court." La. Code Crim. P. 691. "Dismissal by the district attorney of an indictment or of a count of an indictment, discharges that particular indictment or count. The dismissal is not a bar to a subsequent prosecution . . . ." La. Code Crim. P. 693.

22

former." *Id.* at 820. The district court did not reach the question of whether the Village of Turkey Creek is vicariously liable, concluding that it was entitled to summary judgment because plaintiffs failed to sustain their state-law claims against the individual defendants. Because this conclusion was in error, we reverse. On remand, should the district court reach the issue of the Village of Turkey Creek's vicarious liability, it should then consider in the first instance whether Marcantel and Tarver were acting within the scope of their employment such that the Village can be held liable for plaintiffs' viable state-law claims against the individual defendants.

## IV. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment to defendants on the following claims: (1) the § 1983 false arrest claim against Tarver arising from the August 2005 arrest; (2) the § 1983 excessive force claims against Marcantel and Tarver arising from the August 2005 arrest; and (3) the claim against Tarver under Louisiana law for false arrest and imprisonment arising from the August 2005 arrest; (4) the claim against Marcantel and Tarver under Louisiana law for excessive force/battery; and (5) the vicarious liability claim under Louisiana law against the Village of Turkey Creek. We affirm the district court's grant of summary judgment to defendants in all other respects. Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

AFFIRMED in part; REVERSED in part; and REMANDED.