# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 24, 2009

No. 08-31221
Summary Calendar

Charles R. Fulbruge III
Clerk

JERRY ROME

Plaintiff - Appellant

v.

TERRY GUILLORY; DANIEL EDWARDS, In His Official Capacity as Sheriff of Tangipahoa Parish; UNIDENTIFIED PARTIES; DALE ATHMANN; HENRY NEIHAUS

Defendants - Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans
2:06-CV-2089

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Jerry Rome was arrested on May 5, 2005, for simple assault after his daughter warned the authorities that he was on his way to the Ponchatoula Police Department with a loaded handgun and an eye toward "taking care of" the officer who had earlier arrested him for soliciting prostitution. Rome now brings claims against the sheriff of Tangipahoa Parish and the arresting deputies under

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

28 U.S.C. § 1983 and Louisiana law, arguing that he was illegally arrested and maliciously prosecuted. Defendants moved for summary judgment, and the district court obliged. Because the court correctly determined that defendants had probable cause to arrest Rome and that the record presents no genuine issue of fact suggesting otherwise, we affirm the court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2005, Terri Rome, Jerry Rome's daughter, called the Ponchatoula Police Department dispatcher and the Tangipahoa Parish Sheriff's Department dispatcher and told them that she had just confronted her father about his earlier arrest for soliciting prostitution and that he thereafter left in his pick-up truck with a loaded handgun saying that he was going to hunt down the officer that arrested him. The Ponchatoula dispatcher confirmed that Officer John Cieutat had arrested Rome on February 5, 2005, for soliciting prostitution and notified all officers on duty to be on the lookout for Rome.

Deputy Terry Guillory was then dispatched to Rome's house. There, he interviewed Terri and Rome's ex-wife, Dixie Catoire. Both women provided written statements describing how Rome reacted by becoming angry after Terri confronted him with the fact of his February arrest, how he stated that he was going to hunt down the officer who had arrested him and "take care of all the lies about him," how he obtained and loaded his handgun, and how he left in his black Chevy Silverado pick-up truck.

Deputy Henry Neihaus, after hearing of these events over the radio, encountered Rome's pick-up truck on the road and performed a traffic stop near Ponchatoula High School, which is roughly two miles from the Ponchatoula Police Department. After Rome's truck was stopped, Deputy Dale Athmann arrived and observed a fully loaded handgun on the console of Rome's truck. Deputy Guillory then appeared, and Rome was arrested for simple assault.

2

Rome later filed this civil suit against Sheriff Daniel Edwards and Deputies Guillory, Athmann, and Neihaus (collectively, "Defendants") in the United States District Court for the Eastern District of Louisiana. He alleged claims under 42 U.S.C. § 1983, arguing that Defendants violated his Fourth Amendment rights by illegally arresting him without probable cause and by employing excessive force. Additionally, he brought state-law claims, asserting that he was illegally arrested and maliciously prosecuted. Defendants filed a motion for summary judgment, contending that the record evidence showed that they were entitled to qualified immunity from the § 1983 claims and that the state-law claims failed because Defendants had probable cause to arrest Rome and because they had not used excessive force. Rome filed a cross-motion for summary judgment, asserting otherwise. The district court ruled in favor of Defendants.

Rome filed a timely notice of appeal. He challenges the district court's dismissal of his § 1983 claim that he was illegally arrested without probable cause and the court's dismissal of his state-law claims.[1]

## II. DISCUSSION

We review de novo the district court's order granting Defendants' motion for summary judgment and apply the same standard as did the district court. *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009). "We will affirm the district court's order granting summary judgment 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(c)).

---

[1] Rome does not challenge the court's conclusion concerning his excessive force claim, which is therefore waived. *See United States v. Jimenez*, 509 F.3d 682, 693 n.10 (5th Cir. 2007).

All of Rome's claims will fail if the district court correctly determined that Defendants possessed probable cause to arrest Rome and that no genuine issue exists as to that determination. To overcome Defendants' qualified immunity defense[2] to Rome's § 1983 claim that he was arrested in violation of the Fourth Amendment, Rome must make a showing of no probable cause. *See Club Retro*, 2006 WL 6245546, at *13 ("The constitutional claim of false arrest requires a showing of no probable cause."). Similarly, both of Rome's state law claims—false arrest and malicious prosecution—require, among other things, a showing of no probable cause. *See Deville v. Marcantel*, — F.3d —, 2009 WL 1162586, at *12–13 (5th Cir. May 1, 2009) (explaining (1) that false arrest occurs when an officer arrests an individual without statutory authority and that, absent a warrant, the officer has such authority when he has "probable cause for the arrest," and (2) that an element of the state-law claim of malicious prosecution requires "the absence of probable cause").

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id*. at *4; *see also Club Retro*, 2006 WL 6245546, at *13 ("The Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." (internal quotation marks omitted)).

---

[2] Qualified immunity involves a two-prong test: first, did Defendants violate the constitution under current law; second, were Defendants' actions objectively unreasonable in light of clearly established law as it existed at the time of the alleged violations. *See Club Retro LLC v. Hilton*, — F.3d —, 2006 WL 6245546, at *13 (5th Cir. May 6, 2009). Here, the analysis begins and ends with the first prong because we conclude, as did the district court, that no fact issue exists suggesting that a constitutional violation occurred.

Defendants assert, and the district court agreed, that they had probable cause to arrest Rome for simple assault. "Simple assault is an assault committed without a dangerous weapon," LA. REV. STAT. ANN. § 14:38, and "[a]ssault is an attempt to commit a battery," *id.* § 14:36. Battery, in turn, "is the intentional use of force or violence upon the person of another." *Id.* § 14:33. A crime is attempted when "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object," regardless of "whether, under the circumstances, he would have actually accomplished his purpose." *Id.* § 14:27(A). The statute further delineates what does and does not constitute an attempt:

> Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but . . . searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.

*Id.* § 14:27(B)(1).

In this case, the district court determined that Defendants had probable cause to arrest Rome and that the record raised no genuine issue as to that determination. We agree. The summary judgment evidence demonstrates that Defendants knew: (1) that Rome stated he was going to the Ponchatoula Police Department to shoot the officer who had arrested him in February; (2) that Rome loaded his handgun before leaving the house; (3) that he took his gun with him when he left the house in his pick-up truck; and (4) that Rome had his gun with him when he was pulled over nearly two miles from the Ponchatoula Police Department. Based on this knowledge, a prudent person would believe that Rome was committing assault—that is, attempted battery—because he was searching for his intended victim with a dangerous weapon and with the intent to use force or violence on that victim. Rome points to no fact that would raise a genuine issue as to this conclusion, and, indeed, we find nothing in the record

suggesting that a genuine issue exists concerning Defendants' probable cause to arrest Rome. Thus, summary judgment in favor of Defendants is proper.

Rome argues that the district court reached its conclusion by improperly "bootstrapping" its reasoning from a determination that Rome committed the nonexistent offense of attempted assault. However, Rome misconstrues and misunderstands the district court's explanation. The court did not conclude that Rome committed an attempted assault. Instead, it properly looked at the definition of attempt in § 14:27 to determine what constitutes an attempted battery. In fact, it explicitly recognized that attempted assault is not an offense because assault is, among other things, attempted battery. *See State v. Eames*, 365 So. 2d 1361, 1363 (La. 1978) ("If the definition of another crime includes the attempt to do something, the attempt statute, [§] 14:27, cannot be employed, for then a defendant would be charged with an attempt to attempt to do an illegal act."). We find no flaw in the district court's reasoning, and Rome fails to provide any authority suggesting that assault, as an attempted battery, cannot be determined by looking to § 14:27. On the contrary, the Reporter's Comment to § 14:36, which defines assault, specifically references § 14:27 in discussing assault as an attempted battery. *See* LA. REV. STAT. ANN. § 14:36 cmt. (stating that "[a]ny attempt to commit a battery will constitute an assault" and referencing § 14:27's "discussion of 'attempts'").

Rome additionally urges that the district court's conclusion found a violation of § 14:27 itself. This argument, again, ignores the district court's actual reasoning, and therefore fails for the same reasons stated above: the court correctly looked to § 14:27 to determine whether the officers had probable cause to believe an assault was about to be or was being committed.

Because the record raises no genuine issue concerning the conclusion that Defendants had probable cause to arrest Rome, Defendants are entitled to summary judgment on Rome's § 1983 and state law claims.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment.