# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51349

United States Court of Appeals
Fifth Circuit

**FILED**

March 29, 2018

Lyle W. Cayce
Clerk

EUGENE CADENA,

      Plaintiff–Appellant,

v.

CHRISTOPHER RAY, San Antonio Police Officer; CRAIG RODRIGUEZ, San
Antonio Police Officer; MICHAEL MAROTTA, San Antonio Police Officer,

      Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:15-CV-552

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

PER CURIAM:*

      San Antonio Police Officers Christopher Ray, Craig Rodriguez, and
Michael Marotta, among others, arrested Eugene Cadena. Cadena claims they
used excessive force in doing so. Cadena sued the officers under 42 U.S.C.
§ 1983, alleging they violated his First, Fourth, and Fourteenth Amendment
rights. The district court granted summary judgment for the officers on all

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-51349

claims. Cadena appeals the ruling on his Fourth Amendment claim, and we affirm.

## I

The principal summary judgment evidence in this case consists of two videos, one recorded by Cadena on his cell phone and one taken by a nearby security camera. As Cadena filmed his wife's arrest for public intoxication in a hotel lobby, an officer, who later gave an affidavit stating that "Cadena smelled of intoxicants, had bloodshot eyes, [and] was unsteady on his feet," ordered Cadena to leave the lobby and wait outside. Cadena did not comply with this order but instead spoke to his wife, yelled to his brother-in-law, who was also intoxicated and had approached the scene, and accused Officer Rodriguez of assault.

Cadena started toward the lobby exit, but then proceeded around a column, returning to the scene of the arrest of his wife, and approached Officer Rodriguez from behind. Officer Rodriguez instructed Cadena to "put [his] hands behind [his] back." Cadena said "No, I'm not" five times and began to backpedal. Officer Rodriguez pushed Cadena against a wall, and Officers Rodriguez and Ray attempted to subdue him by wrestling him face-down to the ground, but he refused to surrender his arms.

Assisted by two other officers, Officers Rodriguez and Ray flipped Cadena onto his back. One of the officers kneeled on him as Officer Marotta entered the lobby from the street. Officer Marotta fired a taser round at Cadena, who responded by swiping at one of the officers standing over him. Cadena alleges that Officer Marotta fired a second taser round shortly thereafter. The officers then handcuffed Cadena and arrested him. Simultaneously, Cadena's brother-in-law approached the arresting officers and was himself placed under arrest.

No. 16-51349

Cadena suffered a cut next to his right eye and taser marks on his buttocks. He also alleges numbness in his left hand and anxiety as a result of the incident. Cadena brought suit under 42 U.S.C. § 1983 against several of the officers, alleging that they violated his First Amendment "right to record the conduct of officers," Fourth Amendment right against excessive force, and various Fourteenth Amendment rights.

The district court granted summary judgment in favor of Officers Ray, Rodriguez, and Marotta on all claims. In this appeal, Cadena challenges only the district court's ruling that qualified immunity shields the officers from his excessive force claim.

## II

We review a district court's grant of summary judgment de novo.[1] When a party moving for summary judgment asserts qualified immunity, the non-movant has the burden to rebut qualified immunity[2] by "establish[ing] a genuine fact issue as to whether the [officers'] allegedly wrongful conduct violated clearly established law."[3] While we generally consider the facts in the light most favorable to the non-moving party, in a case involving video evidence taken at the scene we also view "the facts in the light depicted by the videotape."[4] We review "the scope of clearly established law and the objective reasonableness of the defendant government official[s'] actions" de novo.[5]

---

[1] *See, e.g.*, *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 641 (5th Cir. 2004).

[2] *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003)).

[3] *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)) (second alteration in original).

[4] *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011).

[5] *Flores v. City of Palacios*, 381 F.3d 391, 394 (5th Cir. 2004).

No. 16-51349

**III**

Police officers are immune from suit under the doctrine of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6]  To make out a Fourth Amendment excessive force claim, a plaintiff must establish "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable."[7]  Whether force was excessive to the need and objectively unreasonable depends on the totality of the circumstances[8] and "must be judged from the perspective of a reasonable officer on the scene."[9]  In this analysis we pay particular attention to (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" and (3) "whether [the suspect] is actively trying to resist arrest" or flee.[10]

Cadena challenges the propriety of the "take down," arguing the Officers "thr[ew] [him] against the hotel wall, wrestled [him] to the ground . . . [and] pinned and kneed" him.  He also takes issue with being tased twice.  Because we conclude that neither the "take down" nor the tasing violated Cadena's Fourth Amendment rights, qualified immunity applies.  The district court properly granted summary judgment.

---

[6] *Thompson v. Mercer*, 762 F.3d 433, 436-37 (5th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[7] *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (quoting *Flores*, 381 F.3d at 396).

[8] *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

[9] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[10] *Id.*

4

No. 16-51349

## A

The Officers were justified in the "take down" because they had reason to believe Cadena posed a threat to their safety and resisted arrest. In *Poole v. City of Shreveport*, we held that a suspect who "refus[ed] to turn around and be handcuffed . . . posed an 'immediate threat.'"[11] Here, when ordered to place his hands behind his back, Cadena instead backed away from Officer Rodriguez. Cadena also "actively tr[ied] to resist arrest."[12] When the suspect in *Poole* "backed away from the [arresting] officers," we said he had "actively resist[ed]" arrest.[13] Similarly, Cadena backed away from Officer Rodriguez after being ordered to put his hands behind his back.

Cadena's intoxicated state and erratic behavior gave the Officers further reason to believe he was a threat, which makes this case unlike *Trammell v. Fruge*.[14] In *Trammell*, we held that a reasonable jury could find that an officer used excessive force in tackling the plaintiff in the course of arresting him for public intoxication.[15] Though the *Trammell* plaintiff similarly refused to submit his arms for handcuffing, the arresting officers had only a brief exchange with him[16] and "used very little, if any, negotiation before resorting to physical violence."[17] Here, by contrast, the Officers spoke calmly to Cadena for several minutes despite his attempt to interfere with his wife's arrest and his erratic behavior throughout the interaction. Furthermore, Cadena not only disobeyed the Officers' order to submit to arrest, he had disobeyed their prior order to leave the lobby. His failure to comply twice, along with the potentially

---

[11] 691 F.3d 624, 629 (5th Cir. 2012) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam)).

[12] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[13] *Poole*, 691 F.3d at 629 (quoting *Deville*, 567 F.3d at 167).

[14] 868 F.3d 332 (5th Cir. 2017).

[15] *Id.* at 340, 342-43.

[16] *Id.* at 336-37.

[17] *Id.* at 342.

threatening nature of his going around a column behind Officer Rodriguez after appearing to leave the scene, distinguishes these facts from those of *Trammell*. Thus, it was reasonable for Officer Rodriguez to believe Cadena was resisting.

Furthermore, we have approved of "'measured and ascending' actions that correspond[] to [an arrestee's] escalating verbal and physical resistance."[18] Cadena continued to resist even after he was wrestled to the ground. The security camera footage shows that Officers "pinned and kneed" Cadena when he resisted while the Officers effected the arrest. Each element of the Officers' "take down" corresponded to Cadena's level of resistance, and was thus reasonable.[19]

**B**

Officer Marotta's use of a taser also did not violate Cadena's Fourth Amendment rights. Use of a taser is appropriate when a suspect continues to resist arrest. We have held that tasing is permissible "after [a suspect] continuously fail[s] to comply" and "resist[s] handcuffing," particularly when it is not "the first method to gain . . . compliance."[20] But we have also said that tasing is inappropriate where either it is unclear that the plaintiff was resisting[21] or the plaintiff was not resisting at all.[22] Here, four officers helped "take down" Cadena, and the video evidence clearly shows that he nonetheless continued to resist handcuffing. Only after the Officers tried conventional methods to subdue Cadena did Marotta intervene with the taser.

---

[18] *Poole*, 691 F.3d at 629 (quoting *Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010) (per curiam) (unpublished)).

[19] *See id.*

[20] *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 182 (5th Cir. 2016) (emphasis omitted).

[21] *See Darden v. City of Fort Worth*, 880 F.3d 722, 729-31 (5th Cir. 2018) (noting that police bodycam footage did not clearly contradict plaintiff's claim that he was not resisting arrest, so *Scott v. Harris*, 550 U.S. 372 (2007) did not apply).

[22] *See Pena v. Rio Grande City*, 879 F.3d 613, 619-20 (5th Cir. 2018).

No. 16-51349

In *Poole*, we also approved of the use of a taser as a response to escalating resistance.[23] Though the video does not clearly show when Marotta fired the second taser round, it does show that immediately after the first taser shot Cadena swiped at one of the arresting officers with his arm. Marotta could have reasonably interpreted Cadena's swipe as an escalation of resistance, justifying the second taser shot as a proportional response.[24]

*     *     *

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[23] *Poole*, 691 F.3d at 629 (quoting *Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010)).

[24] *See Darden*, 880 F.3d at 729 ("[O]fficers must assess not only the need for force, but also the relationship between the need and the amount of force used." (internal quotation marks omitted) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam))).