# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-41223

United States Court of Appeals
Fifth Circuit

**FILED**
May 6, 2014

Lyle W. Cayce
Clerk

CLAUDIA DAWSON,

Plaintiff–Appellant

v.

ANDERSON COUNTY, TEXAS; SHERIFF GREG TAYLOR;
JAILER KAREN GILES; JAILER CHENEYA FARMER;
JAILER SARAH WATSON; JAIL SERGEANT DARRYL WATSON,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:11-CV-507

Before SMITH, DENNIS, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:[*]

Appellant Claudia Dawson was arrested by Palestine, Texas police for public intoxication and interference with public duties. She was taken to the Anderson County jail and, based on probable suspicion, police officers asked the jail's officers to perform a strip search. During that search, Dawson was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

shot with a pepperball gun,[1] once in the leg and once in the abdomen. She sued, alleging civil rights violations under 42 U.S.C. § 1983 for use of excessive force by Anderson County jailers and an unreasonable search. She also raised pendent state law claims for assault and battery.[2] The district court granted the defendants' motion for summary judgment and dismissed Dawson's claims. We AFFIRM.

"We review the district court's summary judgment decision de novo, applying the same standards as the district court." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Appellant first claims that the use of the pepperball gun constituted excessive force in violation of the Fourth Amendment.[3] Contrary to her jailers, Dawson stated she initially complied with their directive to "squat and cough" during the strip search. This initial compliance removed any need for the pepperball gun (which left small marks and broke the skin) and, she contended, its use therefore was excessive. The defendants responded with a claim of qualified immunity. To overcome this defense, Dawson must show an

---

[1] "Pepperball guns are, in essence, paintball guns that fire rounds containing oleoresin capsicum ('OC') powder, also known as pepper spray." *Nelson v. City of Davis*, 685 F.3d 867, 873 (9th Cir. 2012).

[2] The original complaint included an Eighth Amendment violation that was dropped during summary judgment.

[3] The district court correctly characterized this claim as a Fourth Amendment issue rather than a Fourteenth Amendment one—even though Dawson claimed her substantive due process rights were violated. The claim is against Jailer Giles (who shot the pepperball gun) and Sergeant Watson (who authorized the use of the pepperball gun) for their direct actions. It is also raised against Anderson County and Sheriff Taylor for deficient policies, procedures, etc. that allowed the incident. Because we find the use of the pepperball gun to be objectively reasonable, we do not reach Appellant's argument against Anderson County and Sheriff Taylor.

injury caused by actions that were objectively unreasonable in light of clearly established law. *Poole*, 691 F.3d at 627. "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).

We cannot conclude that all reasonable officers would believe that the use of force in this case violated the Fourth Amendment, because it is undisputed that Dawson did not comply with successive search commands given at her arrestee intake encounter. Even crediting her that she obeyed at first, Dawson admitted refusing a renewed command to "squat and cough." Law enforcement officers are within their rights to use objectively reasonable force to obtain compliance from prisoners. *Compare Tillis v. Garcia*, 99 F.3d 1135 (5th Cir. 1996) (affirming judgment as matter of law for defendants in Eighth Amendment excessive force case, in which officers applied physical force to restrain plaintiff after he concededly "engaged in provocative conduct toward the officers"), *with Comeaux v. Sutton*, 496 F. App'x 368 (5th Cir. 2012) (reversing summary judgment for defendants in excessive force case in which plaintiff denied offering *any* resistance to officers' commands and officers forcibly removed handcuffed plaintiff from his wheelchair to floor to remove clothing). Measured force achieved compliance with the officers' search directives in this case, again, crediting, as we must, Dawson's contention that she complied at first but then refused a search order given twice believing it to be abusive. Measured force[4] used on an arrestee who refuses immediately

---

[4] Of course, we do not cast judgment on the use of pepperball projectiles in other factual contexts. *See, e.g.*, *Nelson*, 685 F.3d 867 (holding that qualified immunity did not protect police officers from Fourth Amendment seizure claim stemming from their firing

successive search orders cannot be deemed objectively unreasonable under our qualified immunity caselaw.

We next consider Dawson's argument that the search was conducted in an unreasonable manner.[5]  Dawson's assertion is that, in addition to using a pepperball gun, the defendants laughed at her and made abusive comments. We have held previously that verbal abuse by a jailer alone does not give rise to a § 1983 claim.  *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).  We have already held that the use of the pepperball gun in this case was objectively reasonable, and we do not find that her assertions about laughter and taunts combine to overcome defendants' qualified immunity.

Finally we address Dawson's state law claims of assault and battery.[6] The defendants argue that they are entitled to official immunity under Texas law.  We agree.  The question is whether the officers acted in good faith and their conduct "is evaluated under substantially the same standard used for qualified immunity determinations in § 1983 actions."  *Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007).  Because the officers were entitled to qualified immunity on the federal claims, they are also protected by official immunity under state law.

In sum, the district court did not err in holding in favor of the defendants.

**AFFIRMED.**

---

pepperball that struck plaintiff, a university student at a party who was nonresistant and awaiting instruction from officers, in the eye, causing permanent vision loss).

[5] This claim is raised against Jailers Wells, Giles, and Farmer for their direct roles. It is also pressed against Anderson County and Sheriff Taylor for deficient policies, procedures, etc. Dawson explicitly waived the argument that the strip search was invalid at its inception, citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510 (2012). We accordingly do not pass on whether the search was justified initially.

[6] These claims are against Sergeant Watson and Jailers Giles, Farmer, and Wells.

No. 12-41223

JAMES L. DENNIS, Circuit Judge, dissenting:

The majority concludes that Dawson has failed to present a genuine issue of material fact regarding whether the Defendants[1] violated clearly established Fourth Amendment law by repeatedly shooting at her with a pepperball gun during a strip search in which she was undressed, unarmed, and surrounded by multiple officers. The majority fails to view the evidence in the light most favorable to Dawson and disregards reasonable inferences that

---

[1] I use the term "Defendants" as a short-hand to refer to the individual Anderson County officers who Dawson alleges violated her Fourth Amendment rights. In addition to her claims against the officers in their individual capacities, Dawson also filed suit against Anderson County, Texas, and Sheriff Greg Taylor, in his official capacity. For the reasons set forth *infra,* I believe that Dawson presented competent summary-judgment evidence to overcome the individual Defendants' summary judgment motions. However, I would affirm the district court's summary judgment as to Anderson County and Sheriff Taylor because Dawson failed to present sufficient evidence that her injury was a result of an official policy or custom in Anderson County law enforcement. *See, e.g., Piotrowski v. City of Houston,* 273 F.3d 567, 578 (5th Cir. 2001) ("[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." (quoting *Monell v. Dep't. of Social Serv.*, 436 U.S. 658, 694 (1978))). Dawson does not point to any official "statement, ordinance, regulation, or decision that is officially adopted and promulgated" by Anderson County which was the "moving force" behind Ms. Dawson's alleged constitutional deprivations. *Duvall v. Dallas Cnty.,* 631 F.3d 203, 209 (5th Cir. 2011); *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (en banc). Likewise, no record evidence exists which suggest that any other similar incidents have occurred, let alone a sufficient pattern or custom, to establish municipal liability. *See, e.g., Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). Dawson has presented evidence of only the single incident with which she was personally involved. *Compare DeShay v. Bastrop Indep. Sch. Dist.*, 180 F.3d 262 (5th Cir. 1999) ("[T]he district court correctly determined that, when read in the light most favorable to the [plaintiffs], the summary judgment evidence shows at most an isolated incident . . . which is not actionable under section 1983.") (citation omitted), *with Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999) (upholding jury verdict finding a city liable for damages in a § 1983 action when the plaintiff presented evidence from nine witnesses who all testified to the city's repeated practices that exhibited "deliberate indifference to her constitutional rights by its inaction."). Viewing the facts in the light most favorable to Dawson, she alleges conduct arising out of one incident, involving four individual officers. Although the evidence before the court gives rise to a triable issues of fact regarding the individual officers' ("Defendants") liability, Dawson's allegations are limited to this single occurrence and thus are insufficient to raise a genuine issue of material fact regarding an unconstitutional policy or custom in Anderson County.

No. 12-41223

jurors could draw from the record to conclude that under clearly established law, the officers used excessive force and conducted a strip search in an unreasonable manner in violation of Dawson's Fourth Amendment rights. Accordingly, I respectfully dissent and would reverse and remand for trial.

## I.

Although a summary-judgment motion premised upon qualified immunity shifts the burden to the plaintiff, this burden shift does not alter the requirement that a court view all evidence and make all reasonable inferences in the light most favorable to the plaintiff. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor.") (citation omitted). The majority fails to view the evidence in the light most favorable to Dawson, as it must at this procedural posture. Employing similar reasoning as the district court, the majority affirms the summary-judgment order as to Dawson's excessive-force claim,[2] concluding that not all reasonable officers would have known that the use of the pepperball gun here violated the Fourth Amendment because it is "undisputed that Dawson did not comply with successive search commands given at her arrestee intake encounter." Maj. Op., *ante* at 3. I respectfully dissent.

I will begin by describing the evidence in the light most favorable to Dawson. Next, I will note the specific errors the district court, and, in turn, the majority, committed when it credited the Defendants' version of events to conclude that the use of force here was objectively reasonable. Lastly, I will explain why the record evidence sufficiently creates genuine issues of material

---

[2] Dawson's excessive-force claim is asserted against Officer Karen Giles and Sergeant Darryl Watson.

6

facts to overcome Defendants' assertion of qualified immunity and, thus, why reversal and remand is necessary.

## A.

On April 26, 2010, at approximately 11:00 p.m., officers of the Palestine Police Department [hereinafter "PPD"] stopped a vehicle in which Claudia Dawson was a passenger. During the traffic stop, Dawson was arrested for public intoxication and interference with public duties, two misdemeanor charges. PPD officers brought Dawson to the Anderson County Sheriff's Office and requested that the Anderson County Officers conduct a strip search. The Anderson County officers were never informed of the basis for the PPD officers' request for the strip search but nonetheless complied.

Officers Sarah Wells and Cheneya Farmer took Dawson into the "dress-out room" where they instructed Dawson to remove her clothes. Once undressed, Dawson was ordered to squat down and cough. Dawson attests that she complied with this initial order. Once the strip search was in progress, a third officer, Karen Giles, entered. According to Dawson, after she had already complied with the order to squat and cough, one of the officers then stated that she would force Dawson to "squat and cough all night until [she got] tired of looking." Dawson asserts that in response, without yelling, she told the officers that she could not be forced to squat and cough all night. Promptly after this exchange, Sergeant Darryl Watson briefly entered the dress-out room and instructed Officer Giles to shoot Dawson with a pepperball gun. Officer Giles then fired the first shot, which did not hit Dawson. Giles then quickly fired the second shot, which hit Dawson in the left side of her abdomen, causing her to bend over in a "fetal" position. Dawson attests that she then told the officers that she could be pregnant and, if she was, that they could not shoot at her. Officer Giles then fired the third shot, which hit Dawson

in her right knee.  According to Dawson, the two shots broke her skin and caused substantial bleeding.  Dawson further alleges that throughout the strip search, the officers laughed at her expense and were verbally abusive.  One female officer allegedly stated that she "wish[ed] [she] was certified to shoot this bitch up with the pepper ball gun."

It is undisputed that throughout the strip search, and while all of the shots were fired, Dawson was unclothed, standing within one to two feet of the wall in the dress-out room, and was surrounded by multiple officers, at least one of whom was armed with a perpperball gun.  It is also undisputed that Dawson never struck or attempted to strike an officer.

What is disputed is Dawson's level of compliance.  Officer Giles testified that during the strip search, Dawson was belligerent, yelled, threatened the officers, and got "too close" to Officer Farmer.  Officer Farmer testified that Dawson did not comply with the initial order to squat and cough, or any order thereafter, until she was shot with the pepperball gun.  Sergeant Watson testified that if Dawson had complied with the first order to squat and cough—as Dawson asserts she had—then she would have been in compliance and that any further orders to squat and cough would have been improper, agreeing that the officers "don't have any business harassing [detainees]."

**B.**

When the evidence is viewed in the light most favorable to Dawson, the record establishes that she was initially compliant, was not yelling or arguing with the officers, and that after telling officers that she would not comply with a harassing request to squat and cough all night, she was met with near-immediate use of force, while she was undressed, unarmed, and did not pose any threat to the officers' safety.  The majority improperly credits the Defendants' version of events when it concludes that Dawson's conduct was

undisputedly non-compliant and thus reasonably warranted "measured force" to "achieve[] compliance with the officers search directives." Maj. Op., *ante* at 3. By describing Dawson's alleged non-compliance as "undisputed" and characterizing the officers response as "measured"—disregarding testimony that creates an inference that the officers' immediately resorted to force without sufficient negotiation—the majority, like the district court, fails to view the record evidence in the light most favorable to Dawson. Accordingly, I respectfully dissent and would reverse the grant of summary judgment on this issue. *See, e.g., Comeaux v. Sutton*, 496 F. App'x 368, 371 (5th Cir. 2012) (reversing summary judgment in favor of defendants when the district court failed to view the facts in the light most favorable to the plaintiff).

First, Sergeant Watson's acknowledgment that a detainee would be in compliance if he or she obeyed the first order to squat and cough—read in conjunction with Dawson's testimony that she did just that—creates a genuine issue of material fact as to whether Dawson's behavior was in fact non-compliant and therefore whether repeatedly shooting her with a pepperball gun, while naked and surrounded by at least three officers, was an unreasonable, excessive use of force in violation of Dawson's Fourth Amendment rights. Accordingly, summary judgment was improper. *See, e.g., Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (reversing summary judgment when the nature of the plaintiff's resistance to officer's directives during a minor traffic stop was in dispute); *see also Tarver v. City of Edna*, 410 F.3d 745, 754 (5th Cir. 2005) ("At a minimum, determining whether [the defendant officer's] conduct was objectively reasonable requires factfinding and credibility assessments; dismissal is thus inappropriate at the summary judgment phase.").

Second, the district court found that Dawson was "arguing" with the officers.  However, when viewed in the light most favorable to Dawson, the record evidence presents a factual dispute as to whether Dawson was argumentative during the strip search or rather whether any verbal noncompliance on her part was justified given the officers' alleged harassment. The Defendants testified that Dawson was belligerent, screaming, and non-cooperative.  Comparatively, Dawson testified that she did not yell at the officers and merely said, in response to the threat that she would have to squat and cough all night, that: "You can't make me do this all night and I am not going to do it."  The district court appears to have erroneously credited Defendants' testimony and rejected Dawson's characterization of her conversation with the officers during the strip search and thus improperly weighed the evidence.  *See Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001) ("[T]he weighing of the evidence . . . [is a] jury function[], not [that] of a judge. . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  A jury question remains as to whether Dawson's account of her response to the officers' second request to squat and cough is credible and therefore whether or not she was in fact argumentative.

Third, the district court concluded that the use of the pepperball gun was reasonable in part because Dawson did not dispute Officer Giles's testimony that Dawson "was moving toward another jailer" during the strip search. However, Dawson elicited testimony from the Defendants that throughout the entire strip search she was within one or two feet from the wall and never struck or attempted to strike the officers.  The record evidence thus creates a genuine issue of material fact as to whether Dawson approached the officers and, in turn, whether the use of the pepperball gun was reasonably warranted,

10

precluding summary judgment. *See Tarver*, 410 F.3d at 753 (reversing summary judgment because "reasonable officers could disagree about whether [the officers conduct] was not unreasonable under the circumstances, [and thus] this decision should not be made at the summary judgment stage. Any credibility determination made between the officers' and [the plaintiff's] version of events is inappropriate for summary judgment.").

Moreover, even if we were to classify Dawson's refusal to comply with the second order to squat and cough all night as non-compliant and her response to the officers as argumentative, a jury could nonetheless reasonably infer from the record that the pepperball shots were fired in quick succession, immediately after Sergeant Watson stuck his head into the room and gave the order to shoot, and thus amounted to an unreasonable use of force. Dawson testified that none of the jailers said anything to her between the firing of the first two shots, one of which made contact with her body. Thus, viewed in the light most favorable to Dawson, the evidence raises a genuine issue of material fact with regard to whether—even if she was technically noncompliant—her refusal to continue to squat and cough warranted the jailers' immediate resort to repetitively shooting her with a pepperball gun, without first attempting to utilize any other form of sanctions, such as additional negotiation. "[O]fficers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167. A juror could thus reasonably infer that the jailers did not use measured, gradual force to extract compliance, but rather resorted too quickly and unreasonably to the use of the pepperball gun. *See, e.g.*, *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012) (reversing summary judgment and reasoning that "a reasonable jury could find that the degree of force used was not justified where the officer engaged in very little, if any, negotiation with the suspect and instead quickly

11

resorted to [force]"); *Deville,* 567 F.3d at 168 ("A reasonable jury could infer from [the plaintiff's] deposition testimony that [the officer] engaged in very little, if any, negotiation with her[.]"). According, I respectfully dissent from the majority's conclusion that the record evidence does not present a genuine issue of material fact that the Defendants' use of force was excessive and in violation of Dawson's Fourth Amendment rights.

## C.

At the summary-judgment stage, if a party asserts qualified immunity in defense of an excessive-force claim, the plaintiff must provide evidence that raises a genuine issue of material fact regarding: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009); *see also Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013). When analyzing an excessive-force claim and determining whether the officials' conduct was objectively unreasonable, we must carefully consider the particular facts and circumstances of the case, including the so-called *Graham* factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others, and," (3) "whether he is actively resisting[]." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation marks omitted). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). Viewing the evidence in the light most favorable to Dawson, as we must, Dawson has presented competent summary-judgment evidence to establish all three elements required to rebut Defendants' qualified immunity defense.

First, there is record evidence that Dawson suffered an injury. Dawson attests that two of the three shots fired with the pepperball gun broke her skin and caused substantial bleeding. An injury does not need to be "substantial" if under the totality of the circumstances the force was excessive and objectively unreasonable, particularly if the defendants' conduct was malicious. *Schmidt v. Gray*, 399 F. App'x 925, 928 (5th Cir. 2010); *see also Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) ("[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries . . . will prove cognizable when resulting from an officer's unreasonably excessive force.") (citations omitted). Here, the defendants allegedly laughed at Dawson, threatened her, and repeatedly shot her with the pepperball gun despite her compliance. When viewed in the light most favorable to Dawson, the evidence establishes that the Defendants' conduct in this context amounted to a malicious and unnecessary physical assault upon a non-threatening, compliant detainee. The resulting injury caused by Defendants' purportedly malicious conduct sufficiently raises a genuine issue of material fact with regard to the first prong of her excessive force claim.

Second, Dawson must establish that her injuries were a direct result of the use of force. Here, it is undisputed that Dawson's injuries on her right knee and left abdomen were caused by the pepperball gun bullets fired by Officer Giles.

Third, Dawson must raise a genuine issue of material fact that the use of the pepperball gun was objectively unreasonable. *See, e.g.*, *Goodson v. Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Without applying the *Graham* factors, the majority summarily concludes that because Dawson was non-compliant, the officers' use of force was objectively reasonable to achieve compliance and thus the Defendants are entitled to qualified immunity. I

disagree.    Applying the *Graham* factors to the record evidence viewed in the light most favorable to Dawson, I would find that she presented sufficient evidence to create a genuine issue of material fact to dispute the Defendants' claims that the use of the pepperball gun was objectively reasonable under clearly established law.

First, Dawson was in custody for two misdemeanor charges, neither of which involve accusations of violence.    Thus, the first *Graham* factor—the severity of the crime—militates against concluding that the Defendants' use of force was objectively reasonable.  *See, e.g.*, *Reyes v. Bridgwater*, 362 F. App'x 403, 407 n. 5 (5th Cir. 2010) (noting that the decedent was in violation of "at most, a misdemeanor," suggesting that the "severity of the crime" factor thus weighs against the district court's summary-judgment order for the defendant-officer who used deadly force).

Application of the second *Graham* factor—the individual's threat to officer safety—similarly supports a conclusion that Defendants' conduct was not objectively reasonable.  Viewing the evidence in the light most favorable to Dawson, she was compliant with the officers' instruction to submit to a strip search, obediently agreed to squat and cough upon the officer's first instruction to do so, was unarmed, unclothed, stood within one to two feet of the dress-out room's wall, was surrounded by multiple armed officers, and did not attempt to strike an officer.  On this record, viewing the evidence in her favor, Dawson did not pose a threat to the officers' safety.

Lastly, the third *Graham* factor—whether the plaintiff actively resisted the officers—also supports a conclusion that the officer's use of force was objectively unreasonable.  Crediting all reasonable inferences in Dawson's favor, she presented record evidence that she never resisted the officers' lawful directives.  Rather, the evidence regarding her refusal to squat and cough after

she initially complied with officers' orders may reasonably be construed as a verbalized denial to consent to an unlawful, abusive order and thus would not qualify as "active resistance" and would not justify the officer's resort to force. *Cf. Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009) (finding that the use of measured force was reasonable when there was video evidence that the plaintiff *physically resisted* an officer's attempt to handcuff him).

On this record, viewing the evidence in Dawson's favor, a jury could reasonably conclude that the officers resorted to the use of force without threat to their safety, in violation of Dawson's clearly established Fourth Amendment rights, and that therefore, summary judgment for Defendants was improper. *See, e.g.*, *Newman*, 703 F.3d at 763. Under *Graham,* a reasonable officer would have sufficient notice that using a pepperball gun to repeatedly shoot a naked, possibly pregnant, compliant, non-threatening detainee who merely stated she would not comply with an abusive command, clearly constitutes excessive force in violation of the Fourth Amendment. Although Dawson was unable to point to case law forbidding this exact conduct, that alone is insufficient to warrant qualified immunity.

> When the arrest occurred, [Dawson] had a clearly established right to be free from excessive force, and it was clearly established that the amount of force that the officers could use "depend[ed] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee."

*Deville*, 567 F.3d at 169 (quoting *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir.2008)). "Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Id.* at 763-64. "[T]he *Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law." *Id.* (internal

quotation marks omitted).  Therefore, the district court erred in granting the Defendants' motion for summary judgment based upon qualified immunity.

## II.

In addition to the excessive force-claim,[3] Dawson alleges that the strip search was conducted in an unreasonable, unconstitutional manner, in violation of the Fourth Amendment.[4]  Dawson contends that the search was unreasonably conducted because she was verbally harassed, laughed at, and, despite her compliance with the officers' initial orders, shot repeatedly with a pepperball gun.  The majority opinion reasons that the use of the pepperball gun was not objectively unreasonable and an unreasonable search claim may not be established by allegations of mere verbal abuse alone, and affirms summary judgment on this claim.

Because I disagree with the majority's finding that the use of the pepperball gun here was not unreasonable, I would consider the allegations of verbal harassment in the context in which it occurred and not in isolation from the officers' use of the pepperball gun.  While mere verbal threats and gestures

---

[3] Dawson's unreasonable-search claim is asserted against Officers Wells, Farmer, and Giles.

[4] Relying upon a flawed reading of *Florence v. Board of Chosen Freeholders of the County of Burlington*, 132 S. Ct. 1510 (2012), Dawson contended that the strip search itself, if conducted properly, would not have violated her Fourth Amendment right to be free from unreasonable searches by the government.  In *Florence*, the Court found that a strip search of a detainee prior to admission to the general prison population is reasonable and thus constitutional under the Fourth Amendment.  However, the *Florence* Court explicitly limited its holding, noting that "[t]his case does not require the Court to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees." *Florence*, 132 S.Ct. at 1522. It is unclear from the record whether Dawson—who was admitted into custody for two misdemeanor crimes and released the following morning— was admitted to the general prison population or whether she had any contact with other detainees. Thus, Dawson may have had a viable claim that the strip search was unreasonable at its inception.  However, she waived this argument by conceding that she was not harmed by the search itself and that she had no objection to it, had it been done "properly."  Thus, I consider only her claim that the *manner* in which the search was conducted was unconstitutional.

may not be cognizable under § 1983, the combination of taunting and harassing language with the use of excessive force would violate clearly established law as an unreasonable manner of conducting a search.

Whether a search is conducted reasonably under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)). Dawson has presented summary-judgment evidence that during the strip search, despite her compliance and non-threatening behavior, she was surrounded by multiple officers, was verbally abused, was seen undressed by a male officer, and was shot at repeatedly with a pepperball gun.  Moreover, the state's need for the search is unclear.  As noted *supra,* the search was conducted pursuant to a request by the arresting officers from the PPD.  The majority states that the search was conducted upon "probable suspicion" and cites to an Anderson County Unclothed Search form that indicates only that the strip search was conducted because "PPD asked."  Despite the majority's contention to the contrary, there is no evidence in the record that the search was conducted based upon reasonable or "probable" suspicion.  Nor does the record contain evidence that the search was conducted because, for example, Dawson posed a threat to officer safety or was carrying any contraband on her person or had concealed evidence.  In light of the absence of any evidence suggesting there was any need for the search balanced against the way in which it was conducted, reasonable jurors could conclude that the Defendants violated clearly established Fourth Amendment law that requires that strip

searches be conducted in a reasonable manner and in light of the government's need for the search.

Rather than viewing the totality of the circumstances as alleged by Dawson, the majority again improperly discredits and disregards evidence that gives rise to a genuine issue of material fact regarding the reasonableness of the search.

I respectfully dissent from the majority opinion and would hold that the district court's summary-judgment order in favor of the Defendants should be reversed and the case remanded for further proceedings regarding Dawson's excessive-force and unreasonable-search claims.[5]

---

[5] Additionally, for the reasons that I disagree with the majority's conclusions as to Dawson's § 1983 claims, I likewise would reverse the summary-judgment order with regard to her state-law claims of assault and battery raised against Officers Wells, Farmer, and Giles, and Sergeant Watson. "Under Texas law, government officials are entitled to immunity from suit arising under performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. . . . The good faith element is 'substantially' the same as the federal inquiry of qualified immunity . . . . [but is distinct in that it] focuses solely on the objective legal reasonableness" of the officers' conduct. *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 885 (5th Cir. 2004). Because, as explained *supra,* Dawson has presented genuine issues of material fact from which a reasonable factfinder could conclude that the Defendants acted unreasonably in causing her injuries, summary judgment as to her state-law claims was likewise improper.