# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 15, 2022

Lyle W. Cayce
Clerk

No. 19-10013

JACQUELINE CRAIG, INDIVIDUALLY AND ON BEHALF OF MINORS
J.H., K.H., AND A.C.; BREA HYMOND,

*Plaintiffs—Appellees,*

*versus*

WILLIAM D. MARTIN,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:17-CV-1020

Before OWEN, *Chief Judge*, and BARKSDALE and DUNCAN, *Circuit Judges*.

PRISCILLA R. OWEN, *Chief Judge*:

This case concerns the denial of qualified immunity to a police officer accused of using excessive force. Jacqueline Craig and four of her children sued Officer William D. Martin asserting claims for unlawful arrest, bystander injury, and excessive use of force. The district court denied Martin's motion for summary judgment on the excessive force claims on qualified immunity grounds. This interlocutory appeal followed. We reverse the district court's denial of qualified immunity on the excessive force claims

No. 19-10013

and render judgment in Martin's favor as to those claims. We express no opinion on the district court's dismissal of the plaintiffs' other claims, which are not part of this appeal.

## I

Officer Martin received a call dispatching him to a "disturbance" in the South Division of Fort Worth. The initial 9-1-1 call came from a middle-aged male, stating that several people were on his property arguing, had refused to leave, and were intentionally throwing trash in his yard. A subsequent 9-1-1 call came from the man's neighbor Jacqueline Craig, complaining that the man had grabbed her son by the neck because the boy had allegedly littered.

Martin responded to the call alone. He activated his body camera as soon as he arrived at the scene. One of Craig's daughters, Brea Hymond, also recorded the event on her cell phone. Martin first spoke with the male complainant; Martin then approached Craig to obtain her version of the events. Craig told Martin that the man had grabbed her son, A.C., after A.C. had allegedly littered. In response, Martin asked: "Why don't you teach your son not to litter?" Craig, visibly agitated, told Martin that it did not matter whether her son had littered; the man did not have the right to put his hands on her son. Martin replied: "Why not?"

Craig started to shout at Martin after this provocation. Martin asked why she was shouting at him, to which Craig responded: "Because you just pissed me off telling me what I teach my kids and what I don't." Martin replied in a calm voice: "If you keep yelling at me, you're going to piss me off, and I'm going to take you to jail." Immediately after this exchange, J.H., Craig's fifteen-year-old daughter, stepped between Craig and Martin and put her hands on Craig's forearms. Martin grabbed J.H. and pulled her away from her mother.

Moments later, K.H., Craig's fourteen-year-old daughter, began to walk around Martin's right side; K.H. then pushed Martin in the left side of his back, using most—if not all—of her body weight. Martin pulled his taser and yelled, "Get on the ground!" Martin then allegedly "shov[ed]" his taser into the middle of Craig's back and "threw her to the ground." Craig claims that, as she was going to the ground, her "left arm and shoulder blade [were] still suspended in [Martin's] grip—causing [her] severe pain." The video does not show any throwing or slamming motion; however, it does show Martin holding Craig's left arm and releasing it as Craig slowly descends to the ground.

Martin handcuffed Craig and then walked over to J.H. Again, he shouted: "Get on the ground!" J.H., who was initially still standing, squatted to the ground as Martin moved closer to her. Martin approached her, grabbed her left arm and the back of her neck, and placed her on the ground.

Martin then walked Craig and J.H. to his vehicle. As Martin approached the rear passenger door of the vehicle, K.H. appeared from behind the back of the vehicle. She stood in front of the passenger door in an apparent attempt to block Martin from placing Craig and J.H. in the vehicle. Martin shouted: "Get back, or you're going to jail too," to which K.H. responded: "I don't care." Martin allegedly "struck" K.H. in the throat, moving her out of the way. Martin then attempted to get J.H. into the vehicle. J.H. resisted, leaving her left leg hanging out of the vehicle. Martin repeatedly told her to get in the police cruiser, but she refused. He then allegedly "kick[ed]" J.H.'s left leg into the vehicle.

Martin next went to arrest Hymond, who had been verbally harassing him throughout his arrests of Craig and J.H. Martin grabbed Hymond by the wrist, put her up against the side of the police vehicle, and attempted to wrangle her cell phone out of her hands. He handcuffed her and then put her

up against the vehicle a second time. Hymond refused to respond to Martin's questions about her name and age, so Martin raised her handcuffed arms behind her back in an attempt to obtain compliance. Hymond claims this maneuver caused "[e]xcruciating pain"; however, the video shows that the maneuver had little to any effect on Hymond. She continued to yell at Martin as he raised her arms and immediately after he lowered them. Martin then escorted Hymond into a second police vehicle that had just arrived at the scene.

Craig, individually and on behalf of her minor children—J.H. and K.H.—and Brea Hymond (collectively plaintiffs) sued Martin for unlawful arrest and excessive use of force. Craig also sued Martin on behalf of her minor child A.C. alleging injuries suffered as a bystander to the incident. The district court dismissed A.C.'s claim as incognizable; it dismissed all of the remaining plaintiffs' claims for unlawful arrest, holding Martin was entitled to qualified immunity as to those claims. However, the district court denied Martin qualified immunity on the excessive force claims, concluding that the video evidence submitted by Martin was "too uncertain" to determine whether he was entitled to qualified immunity on that claim. Martin's interlocutory appeal accordingly concerns only the excessive force issue.

## II

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine 'to the extent that it turns on an issue of law.'"[1] "[W]e can review the *materiality* of any factual disputes, but not their *genuineness*."[2]

---

[1] *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

[2] *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000).

"We review the materiality of fact issues *de novo*."[3] When the district court does not specify what fact issues precluded a grant of summary judgment, as is the case here, "[w]e can either scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order."[4] Given the limited record in this case and the availability of video evidence capturing the incident, we have reviewed the record rather than remanding, in order to "resolv[e] immunity questions at the earliest possible stage in litigation."[5]

Normally, "[t]he plaintiff's factual assertions are taken as true to determine whether they are legally sufficient to defeat the defendant's motion for summary judgment."[6] However, if there is video evidence that "blatantly contradict[s]" the plaintiffs' allegations, the court should not adopt the plaintiffs' version of the facts; instead, the court should view those facts "in the light depicted by the videotape."[7] At oral argument, plaintiffs' counsel conceded that the uses of force at issue are captured in the video evidence.[8]

Once a defendant properly pleads qualified immunity, the burden of proof shifts to the plaintiffs to negate the defense.[9] To meet this burden, the

---

[3] *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017).

[4] *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001).

[5] *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *see also Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

[6] *Manis*, 585 F.3d at 843.

[7] *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *see also id.* at 378.

[8] Oral Argument at 33:08-33:35.

[9] *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016).

No. 19-10013

plaintiffs must establish "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[10]

## III

The plaintiffs allege that Martin's use of force violated their Fourth Amendment right to be free from excessive force during a seizure. To prevail on a Fourth Amendment excessive force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[11] "Excessive force claims are necessarily fact intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'"[12]

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[13] "Factors to consider include, 'the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'"[14] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are

---

[10] *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)).

[11] *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

[12] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[13] *Graham*, 490 U.S. at 396.

[14] *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 396).

tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[15] Viewing the evidence in the light most favorable to the plaintiffs, Martin's use of force against each plaintiff was not objectively unreasonable.

We first consider Martin's use of force against Craig. Martin initially grabbed Craig as he was attempting to restrain J.H., after J.H. had stepped in between Martin and Craig. Martin physically separated J.H. and Craig and let go of them both. Right then, Martin was pushed from behind by K.H. Immediately after, Martin grabbed Craig again, drew his taser, and pushed her toward the ground while maintaining a grip on her arm. As Craig went to the ground, Martin shoved the taser into her back. Although Craig initially pled that Martin "threw" her to the ground, Craig's affidavit states that Martin "shov[ed]" her to the ground, and the video of the incident shows Martin pushing Craig onto the ground while maintaining a hold on her arm. Under the circumstances, it was not objectively unreasonable for Martin to grab Craig and force her to the ground to effectuate her arrest. Martin was the only police officer at the scene, he had just been pushed from behind, and he was facing numerous people who were shouting and jostling as he attempted to separate Craig from the crowd and arrest her.

With regard to J.H., the plaintiffs argue that Martin violated J.H.'s Fourth Amendment rights when he took her to the ground, and when he allegedly kicked her leg into the police vehicle. In both instances, J.H. was not complying with Martin's commands. Physical force may be necessary to ensure compliance when a suspect "refus[es] to comply with instructions."[16] However, "officers must assess not only the need for force, but also 'the

---

[15] *Graham*, 490 U.S. at 396-97.

[16] *Deville*, 567 F.3d at 167.

relationship between the need and the amount of force used.'"[17]  A use of force is reasonable if an officer uses "'measured and ascending actions' that correspond[] to [a suspect's] escalating verbal and physical resistance."[18]

Martin's actions were sufficiently measured in relation to J.H.'s resistance.  Martin had commanded J.H. and others to get on the ground.  Although J.H. initially complied, she stood back up while Martin was handcuffing Craig.  Martin approached J.H. and again ordered her to get on the ground, at which point J.H. squatted.  Martin then took J.H. to the ground, applying the necessary force to restrain and handcuff her.  With regard to the alleged "kicking," Martin had commanded J.H. to get into the police vehicle.  J.H. continued to argue with Martin and kept her left leg outside of the vehicle.  Martin used his foot to force J.H.'s leg into the vehicle because he was holding Craig with one arm and the door of the vehicle with the other.  There is no indication that Martin's use of force was excessive.  The plaintiffs do not allege that J.H. suffered any injury as a result of the kick.  Martin's use of force in response to J.H.'s resistance was not objectively unreasonable.

We reach a similar conclusion with respect to K.H.  The relevant conduct occurred just as Martin was attempting to place Craig and J.H. into his police cruiser.  K.H. appeared from behind the vehicle and placed herself immediately in front of Martin, preventing Martin from placing Craig and J.H. in the vehicle.  Martin yelled, "Get back, or you're going to jail, too!"  K.H. stood her ground, responding, "I don't care."  After this response, Martin allegedly struck K.H. in the throat.  Martin's use of force moved K.H.

---

[17] *Id.* (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).

[18] *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (quoting *Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010) (unpublished) (per curiam)).

out of his way, but otherwise had limited visible effect on her. On these facts, Martin's use of force was not objectively unreasonable. K.H. had assaulted Martin—pushing him in the back—earlier in the altercation, and she was interfering with the lawful arrests of Craig and J.H. at the time Martin made physical contact with her. K.H. refused to move and Martin used a relatively minimal amount of force to move her out of the way. Such conduct does not violate the Fourth Amendment.

Nor did Martin violate Hymond's Fourth Amendment rights. Hymond was shouting at Martin throughout the entire confrontation. She did not comply with any of Martin's commands or instructions. Only after Hymond refused to provide Martin with her name did Martin employ any force against her. Martin's use of force—lifting Hymond's handcuffed arms behind her back—was relatively minimal. Hymond continued to verbally deride Martin while Martin was lifting her arms and immediately after he put her arms down. Given Hymond's continued resistance, Martin's use of force against Hymond was not objectively unreasonable.

In sum, Martin's conduct in this case was not objectively unreasonable and did not violate any of the plaintiffs' respective Fourth Amendment rights. On this basis alone, Martin is entitled to qualified immunity. However, even assuming the plaintiffs could show that Martin committed a constitutional violation, Martin is nonetheless entitled to qualified immunity under the second step of the qualified immunity analysis.

## IV

At the second step of the qualified immunity analysis, we consider whether Martin's use of force "violated clearly established statutory or

constitutional rights of which a reasonable [officer] would have known."[19] For a right to be clearly established, "existing precedent must have placed the . . . constitutional question beyond debate."[20] "[N]o reasonable officer could believe the act was lawful."[21] "That is because qualified immunity is inappropriate only where the officer had 'fair notice'—'in light of the specific context of the case, not as a broad general proposition'—that his *particular* conduct was unlawful."[22] Thus, "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."[23] "[S]pecificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."[24]

Here the plaintiffs have failed to provide any controlling precedent showing that Martin's particular conduct violated a clearly established right. Instead, they have pointed to several cases that discuss the excessive force issue at a "high level of generality"—precisely what the Supreme Court has

---

[19] *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)).

[20] *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

[21] *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018); *see also Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (explaining that "the law must be *so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know . . . immediately" that the conduct was unlawful).

[22] *Morrow*, 917 F.3d at 875 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

[23] *Id.* at 876 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam)).

[24] *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)); *see also City of Tahlequah v. Bond*, 142 S. Ct. 9, 11-12 (2021) (per curiam).

repeatedly advised courts they cannot do in analyzing qualified immunity claims.[25]

The first case the plaintiffs identify is *Sam v. Richard*.[26]  In *Sam*, the plaintiff presented evidence that he was on the ground with his hands behind his head when the officer slapped him across the face, kneed him in the hip, and then pushed him against a patrol car.[27]  The court concluded such a use of force on a compliant suspect was "excessive and unreasonable," noting that "it was clearly established at the time of the incident that pushing, kneeing, and slapping a suspect who is neither fleeing nor resisting is excessive."[28]

The second case the plaintiffs rely on to show that Martin's particular conduct violated clearly established law is *Darden v. City of Fort Worth*.[29]  In *Darden*, an officer threw a suspect to the ground after the suspect had placed his hands into the air in surrender.[30]  Officers tased the man multiple times.[31]  They choked him and repeatedly punched and kicked him in the face.[32]  Not long after these actions, the man's body fell limp.[33]  He had suffered a heart attack and died.[34]  The court concluded that the officers' particular conduct

---

[25] *See, e.g.*, *Kisela*, 138 S. Ct. at 1152-53 (quoting *City and Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015)).

[26] 887 F.3d 710 (5th Cir. 2018).

[27] *Id.* at 712, 714.

[28] *Id.* at 714 (citing *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).

[29] 880 F.3d 722 (5th Cir. 2018).

[30] *Id.* at 725.

[31] *Id.* at 725-26.

[32] *Id.* at 726.

[33] *Id.*

[34] *Id.*

violated a clearly established right.[35]  The court concluded that it was clearly established at the time of the incident that "a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest."[36]

The plaintiffs also cite *Joseph ex rel. Estate of Joseph v. Bartlett*.[37]  In *Joseph*, multiple police officers physically struck Joseph twenty-six times.[38]  The officers also tased him twice.[39]  During the incident, Joseph was lying in the fetal position, was not resisting, and was continuously calling out for help.[40]  Joseph eventually became unresponsive and died in the hospital two days later.[41]  The court concluded that the officers used excessive force, and that their conduct violated a clearly established right.[42]  The court noted that "*Darden* repeated what had long been established in our circuit: Officers engage in excessive force when they physically strike a suspect who is not resisting arrest."[43]

None of these decisions, nor any of the other decisions identified by the plaintiffs, provided Martin fair notice that his particular conduct was unlawful.  The decisions in *Sam*, *Darden*, and *Joseph* would not have provided fair notice because the plaintiffs in each case were not resisting arrest when

---

[35] *Id.* at 731-33.

[36] *Id.* at 732.

[37] 981 F.3d 319 (5th Cir. 2020).

[38] *Id.* at 327.

[39] *Id.* at 326-27.

[40] *Id.*

[41] *Id.* at 327.

[42] *Id.* at 342.

[43] *Id.*

No. 19-10013

the alleged unlawful conduct occurred. In all three cases, the plaintiffs had either signaled their surrender by placing their hands in the air and ceasing further movements or were lying on the ground before the alleged unlawful conduct occurred. In contrast, the plaintiffs in this case—except for Craig—were still resisting when the alleged unlawful conduct occurred. J.H. refused to get into the police vehicle when Martin allegedly kicked her leg into the vehicle. K.H. was intentionally obstructing Martin's access to the back door of his vehicle when he pushed her out of the way. Hymond was cursing, shouting, and twisting throughout Martin's attempt to effectuate her arrest. The clearly established law as identified in *Sam*, *Darden*, and *Joseph* is applicable only in situations in which the suspect is not resisting arrest. That is not the case for J.H., K.H., or Hymond here.

Martin's use of force in this case is also far less severe than the use of force in any of the cases the plaintiffs have identified. For instance, the plaintiffs point to a case from this court in which the officer slammed a nonresistant suspect's face into a nearby vehicle, breaking two of her teeth.[44] They point to a decision from another circuit in which multiple officers punched, kneed, and kicked a suspect—while he was handcuffed on the ground—severely enough to fracture the suspect's neck.[45]

Although the plaintiffs need not point to a factually identical case to demonstrate that the law is clearly established, they nonetheless must provide some controlling precedent that "squarely governs the specific facts at issue."[46] The plaintiffs have not provided such precedent here and thus

---

[44] *Bush v. Strain*, 513 F.3d 492, 496 (5th Cir. 2008).

[45] *Krout v. Goemmer*, 583 F.3d 557, 561-63 (8th Cir. 2009).

[46] *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (internal quotation marks omitted) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)).

No. 19-10013

fail to show that the law clearly established that Martin's particular conduct was unlawful at the time of the incident.  They have not overcome Martin's qualified immunity defense.

*     *     *

For these reasons, we REVERSE the district court's denial of qualified immunity on the excessive force claims and RENDER summary judgment in Martin's favor as to those claims.