# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2026

Lyle W. Cayce
Clerk

————————

No. 25-20084

————————

EDGAR MOSTI,

*Plaintiff—Appellant*,

*versus*

GREGORY TULLIS, *Detective*; CAITLAN ADAMS, *Detective*; OFFICER ADAMS,

*Defendants—Appellees*.

————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-3378

————————————————————————

Before RICHMAN, HIGGINSON, and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

This is an excessive-force case. The district court held that the officer was entitled to qualified immunity. We affirm.

I

On June 9, 2023, Edgar Mosti attended a Duran Duran concert at the Cynthia Woods Pavilion. Mosti and two female companions had too much to

————————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

drink and began walking toward an exit. The trio encountered Officer Raymond Adams and Detectives Caitlan Adams and Gregory Tullis. When Detective Tullis questioned Mosti about his inebriation, Mosti responded with a tirade of expletives and racial slurs. Mosti was arrested for public intoxication. In an ensuing struggle with the two detectives, Mosti and Detective Gregory Tullis fell to the ground. The officers' interactions with Mosti were captured on video by the body cameras worn by the officers.

Mosti sued all three officers for excessive force, malicious arrest, and First Amendment retaliation. Mosti subsequently dismissed Officer Adams and Detective Adams from the suit, as well as his First Amendment and malicious arrest claims against Detective Tullis. That left just the excessive force claim against Detective Tullis. As to that claim, Mosti alleged that Tullis intentionally swept his legs out from under him while Mosti was handcuffed and being led away. In response, Tullis claimed that he unintentionally fell alongside Mosti after Mosti attempted to knock Detective Adams over by shoving her with his shoulder. Tullis also argued that any use of force, intentional or otherwise, was reasonable under the circumstances.

After reviewing video of the incident, the district court granted summary judgment to Tullis. The order expressly incorporated the court's reasoning from an earlier hearing. At that hearing, the court noted "some doubt on the video as to how the two people fell," but maintained that "the police were well within their qualified immunity." Transcript of Summary Judgment Hearing at 7, Dkt. No. 56.

Mosti timely appealed. Our review is de novo. We may "affirm on any ground supported by the record . . . even if neither the appellant nor the district court addressed the ground, so long as the argument was raised

below." *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) (quotation omitted).

## II

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam). To avoid summary judgment on qualified immunity, then, it was Mosti's burden to show "(1) that [Tullis] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was clearly established at the time." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quotation omitted). So Mosti needs both a viable excessive force claim and evidence that such a claim was clearly established at the time of his injury to prevail.

To make out an excessive force claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quotation omitted). The parties do not dispute that Mosti was injured, satisfying the first prong. The question on appeal is therefore whether Detective Tullis used "clearly excessive" force that was "clearly unreasonable" when he and Mosti fell to the ground. *Id.*

This "inquiry must be fact-intensive." *Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022). Granularity is essential, as "[t]he timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer [in response] was appropriate or excessive." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). As the Supreme Court has put it, the question "depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless

existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 103 (2018) (per curiam) (quotation omitted). Because the video of the interactions between Mosti and Tullis "significantly aids our understanding of these events" and "neither [the video's] admissibility nor its contents are in dispute," we "view [the] purported facts in dispute 'in the light depicted by the video[].'" *Poole v. City of Shreveport*, 691 F.3d 624, 625 n. 1 (5th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## A

Mosti briefs this appeal as though it turns on a single issue: whether Detective Tullis intentionally "swept" Mosti's legs from under him. On Mosti's telling, the body camera footage shows Detective Tullis deliberately bringing him to the ground with a sweep of his legs, and such an act qualifies as per se unreasonable force, defeating Tullis's qualified immunity defense.

We disagree. In a confused scene, the video evidence shows Mosti resisting being handcuffed before Detectives Adams and Tullis finally restrain him and begin leading him away. Officer Adams then stops to retrieve Mosti's dropped sunglasses and drink, before turning to follow. While Officer Adams is facing downward, Detective Adams's body camera records Mosti pulling away from Detective Tullis. Detective Adams submitted a declaration that at this point, Mosti "came very close to making contact with [her]." When Officer Adams looks back up, his camera captures Mosti stumbling away from Detective Adams and back towards Detective Tullis. It is in *response* to Mosti's resisting arrest that Detective Tullis sticks out his leg, whether purposefully or inadvertently, bringing Mosti to the ground.

Even assuming Mosti is correct that Detective Tullis purposefully tripped him, that would not defeat qualified immunity. Either way, Tullis acted reasonably. Again, consider what the video shows. An extremely

intoxicated Mosti yelled obscenities and racial slurs at officers at the slightest provocation. Mosti then resisted efforts to handcuff him, continuing his drunken misconduct throughout. Finally, even when handcuffed, Mosti used his considerable bulk to lunge towards Detective Adams and send Detective Tullis reeling on the backswing. It does not matter what Tullis subjectively thought or intended. *See Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009). What matters is that a reasonable officer confronted with a noncompliant suspect like Mosti, willing and able to resist officers even when handcuffed, could conclude that bringing Mosti to a prone position was necessary to effectuate his arrest. *See Poole*, 691 F.3d at 629. That is precisely the sort of "measured and ascending" use of force that officers may reasonably take in response to noncompliance. *Buehler v. Dear*, 27 F.4th 969, 984 (5th Cir. 2022) (quotation omitted). That is particularly so where, as here, video evidence does not show the officers acting with any animus towards Mosti, and instead shows that Mosti's resistance created a situation where reasonable force was necessary.

As the plaintiff, Mosti was required to show that Tullis used clearly excessive force that was clearly unreasonable. The video does not show this to be the case. Tullis is therefore entitled to qualified immunity.

B

Mosti's counterarguments are unconvincing.[†] First, Mosti compares himself to fully compliant suspects who were nevertheless harmed by police.

---

[†] Mosti contends that Tullis waived any argument about the reasonableness of his force by claiming in the district court that Mosti's fall was unintentional. We disagree with Mosti's characterization of the pleadings. While it is true that Tullis largely focused on the supposedly unintentional nature of Mosti's fall, his briefing also argued that Tullis was "justified in using some force, as he had to get [Mosti] under control." Tullis also cited this court's decision in *Craig v. Martin*, 26 F.4th 699 (5th Cir. 2022), an intentional force

No. 25-20084

Blue Br. at 10–11 (citing *Doss v. Helpenstell*, 626 Fed. App'x. 453 (5th Cir. 2015) (per curiam) (unpublished), *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), *Newman v. Guedre*, 703 F.3d 757 (5th Cir. 2012), *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009), *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000), and *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017)). But none of these authorities are on point. In *Doss*, the officer repeatedly punched a motorist who passively held onto his steering wheel instead of obeying a command to exit the car. 626 Fed App'x at 455. In *Ramirez*, officers tased a suspect who was passively handcuffed and lying facedown on the ground. 716 F.3d at 372–73. In *Newman*, officers beat and then tased a suspect who was not fighting back or actively resisting. 703 F.3d at 760. In *Deville*, police smashed the car window of a grandmother who was waiting for family to pick up her granddaughter after a minor traffic stop. 567 F.3d at 161–62. In *Goodson*, the officers broke a suspect's arm while tackling him before intentionally jerking that arm back to handcuff him, causing damage likely requiring a total shoulder replacement. 202 F.3d at 734. And finally, in *Hanks*, the officer struck an unarmed suspect from behind after some confusion about the officer's commands. 853 F.3d at 742–43.

None of these cases establishes that it was objectively unreasonable for Tullis to take Mosti to the ground as he did. Mosti was not passive or helpless, as in *Doss*, *Ramirez*, *Newman*, or *Hanks*, but actively resisting Detectives Adams and Tullis. Nor was the use of force grossly disproportionate to the offense, as in *Deville* and *Goodson*. By contrast, Mosti wrestled with officers throughout his arrest and pulled away from Detective Tullis, and in return was taken to the ground to await backup. *Cf. Poole*, 691 F.3d at 629. None of Mosti's cited authorities come close to meeting his

_____

case. We therefore do not think that Tullis waived any argument that his use of force was reasonable if intentional.

No. 25-20084

burden of showing that Tullis's force was "clearly excessive" and "clearly unreasonable." *Deville*, 567 F.3d at 167 (quotation omitted).

AFFIRMED.